NO: 24-11261

In The

# United States Court Of Appeals
## For The Eleventh Circuit

### RICHARD J. MCCLINTON,

*Plaintiff - Appellee,*

v.

### CAPSTONE LOGISTICS LLC,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA

———————

**BRIEF OF APPELLANTS**

———————

**Edward F. Harold**
**FISHER & PHILLIPS LLP**
**201 St. Charles Avenue, Suite 3710**
**New Orleans, LA  70170**
**(504) 522-3303 – Telephone**
**(504) 592-3850 – Facsimile**

*Counsel for Appellants*

*Gibson*Moore  Appellate  Services,  LLC
206 East Cary Street  ♦  P.O. Box 1406 (23218)  ♦  Richmond, VA  23219
(804) 249-7770  ♦  www.gibsonmoore.net

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant, Capstone Logistics, LLC provides the following list of the judges, attorneys, persons, associates, firms, partnerships, or corporations that are known to have an actual or potential interest in the case.

1. AIG Specialty Insurance Company

2. American International Group, Inc. (NYSE: AIG), ultimate parent of AIG Specialty Insurance Company.

3. Capstone Logistics, LLC, Defendant

4. Capstone Logistics Holdings, Inc., parent company of Capstone Logistics, LLC

5. Edwards & Edwards Attorneys and Mediators, PLLC (counsel for Richard J. McClinton)

6. Edwards, Blake C. (counsel for Richard J. McClinton)

7. Edwards, Nicole D. Davis (counsel for Richard J. McClinton)

8. Fisher & Phillips LLP (counsel for Capstone Logistics, LLC)

9. Holbrook, Richard Bryan (counsel for Capstone Logistics, LLC)

10. Harold, Edward Francis (counsel for Capstone Logistics, LLC)

11. Klass, David (counsel for Capstone Logistics, LLC)

12. McClinton, Richard J., Plaintiff

i

13.     Manasco, The Honorable Anna M., U.S. District Judge, NDAL

14.     Walker, Marion F. (counsel for Capstone Logistics, LLC)

## CORPORATE DISCLOSURE STATEMENT

Capstone Logistics, LLC, lists the following parent company: Capstone Logistics Holdings, Inc.  No publicly held corporation owns 10% or more of the stock of Capstone Logistics, LLC or Capstone Logistics Holdings, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

Capstone Logistics LLC requests oral argument. This appeal follows a full trial on the merits and a judgment more than one million dollars. Among the many issues is one of extreme importance, whether an employee's pain untethered by medical evidence to an underlying physiological condition can constitute a physical impairment under the Americans with Disabilities Act. If the answer is yes, employees will be entitled to demand accommodations from their employers for non-observable conditions without any proof of the existence, extent, and impact of a disability other than the employee's own say-so. And employers will be placed in the position of allowing such employees to dictate working conditions with little ability to assess the safety of doing so.

# **TABLE OF CONTENTS**

**Page:**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...................................................i

CORPORATE DISCLOSURE STATEMENT ......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS .......................................................................................iv

TABLE OF AUTHORITIES ................................................................................ vii

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE.................................................................................4

     The Course of Proceedings and Disposition Below........................................4

     Statement of Facts.........................................................................................6

     Standard of Review.......................................................................................12

SUMMARY OF THE ARGUMENT ....................................................................13

ARGUMENT AND LAW ....................................................................................16

    I.    MCCLINTON'S ADA CLAIMS......................................................16

        A.    MCCLINTON DID NOT PRESENT SUFFICIENT
            EVIDENCE TO PROVE THE EXISTENCE OF A
            DISABILITY ........................................................................16

            1.    No Evidence Connected McClinton's Leg Pain to a
                Physical Impairment .....................................................16

            2.    If McClinton's Back Condition Is Considered as
                His Physical Impairment, No Evidence Proved It
                Caused Limitations ........................................................19

iv

3.    McClinton's Testimony that Contradicted the Medical Releases from His Physicians Was Insufficient to Support the Conclusion He Was Substantially Limited in His Ability to Walk................20

B.    MCCLINTON DID NOT PRESENT SUFFICIENT EVIDENCE TO PROVE HE WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY ...................................24

1.    The Test for Assessing Whether an Individual Is a Qualified Individual with a Disability............................24

2.    McClinton's Job Duties ...................................................25

3.    McClinton's Limitations.................................................26

4.    That Duties Are Not the "Principal Accountabilities" Does Not Mean They Are Not Essential Functions ........................................................27

5.    McClinton Presented No Evidence of a Reasonable Accommodation for his Walking Limitations................30

C.    MCCLINTON'S RETALIATION CLAIM FAILS AS A MATTER OF LAW BECAUSE ASKING FOR AN ACCOMMODATION IS NOT OPPOSITION TO A PRACTICE MADE UNLAWFUL BY THE ADA .................34

D.    PLAINTIFF DID NOT HAVE AN OBJECTIVELY REASONABLE BELIEF HE WAS ENTITLED TO THE ACCOMMODATIONS HE SOUGHT ....................................39

II.    THE FMLA INTERFERENCE CLAIM ............................................40

A.    THE FMLA INTERFERENCE VERDICT MUST BE REVERSED BECAUSE IT IS AN AWARD FOR PAIN AND SUFFERING THAT THE FMLA DOES NOT ALLOW ...................................................................40

B.    THE COURT ERRED IN RELYING ON MCCLINTON'S SPECULATION ABOUT HIS BACK INJURY ...................................................................44

C.      THE JURY'S VERDICT ON FMLA INTERFERENCE MUST BE OVERTURNED BECAUSE IT IS CONTRARY TO THE STATUTORY LIMITATION ON DAMAGES FOR SUCH CLAIMS ..........................................46

III.    DAMAGES ..........................................................................47

A.      MCCLINTON DID NOT PRESENT SUFFICIENT EVIDENCE TO SUPPORT AN AWARD OF PUNITIVE DAMAGES..................................................................47

1.      No Evidence Showed Langley Had Any Belief that His Conduct Violated the ADA......................................47

2.      The District Court Improperly Refused to Apply Eleventh Circuit Precedent that Langley's Conduct Cannot Be Imputed to Capstone for Punitive Damages ..........................................................48

B.      THE COURT ERRED IN NOT REDUCING THE BACK PAY AWARD AND IN GRANTING REINSTATEMENT ..............................................................50

1.      Backpay ...........................................................................51

2.      Reinstatement and Front Pay..........................................52

IV.     RULE 11 SANCTIONS ......................................................54

CONCLUSION...................................................................................58

CERTIFICATE OF COMPLIANCE........................................................59

CERTIFICATE OF FILING AND SERVICE ........................................60

## TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Archambault v. United Computing Systems, Inc.*,
  786 F.2d 1507 (11th Cir. 1986).......................................................51

*Arrigo v. Link*,
  836 F.3d 787 (7th Cir. 2016)...........................................................43

*Ash v. Tyson Foods, Inc.*,
  664 F.3d 883 (11th Cir. 2011)........................................................49

*Atwater v. Schwartz*,
  2:18-CV-146, 2020 WL 7249626 (S.D. Ga. Dec. 9, 2020).........................45

*Bartek v. Urban Redevelopment Authority of Pittsburgh*,
  882 F.2d 739 (3d Cir. 1989)............................................................54

*Branscomb v. Sec'y of Navy*,
  461 F. App'x 901 (11th Cir. 2012).....................................................37

*Breneisen v. Motorola, Inc.*,
  656 F.3d 701 (7th Cir. 2011)...........................................................43

*Brim v. Midland Credit Mgmt., Inc.*,
  795 F. Supp. 2d 1255 (N.D. Ala. 2011)..........................................45

*Brown v. Advanced Concept Innovations, LLC*,
  No. 21-11963, 2022 WL 15176870 (11th Cir. Oct. 27, 2022).....................48

*Brown v. Alabama Department of Transportation*,
  597 F.3d 1160 (11th Cir. 2010)........................................................51

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)..........................................................................40

*Collins v. Koch Foods, Inc.*,
No. 20-13158, 2022 WL 1741775 (11th Cir. May 31, 2022)........................51

*Compton v. Bach*,
374 F. Supp. 3d 1296 (N.D. Ga. 2019)..........................................................45

*Covel v. Cmty. Physicians of N. Port, P.A.*,
No. 23-10853, 2024 WL 1923256 (11th Cir. May 1, 2024)...................35, 39

*Crawford v. Metro. Gov't of Nashville and Davidson Cty.*,
555 U.S. 271 (2009)..........................................................................................35

*Cremeens v. City of Montgomery, Alabama*,
427 F. App'x 855 (11th Cir. 2011).................................................................29

*Davis v. Carl*,
906 F.2d 533 (11th Cir. 1990)..................................................................55, 56

*Davis v. Fla. Power & Light Co.*,
205 F.3d 1301 (11th Cir. 2000).......................................................................25

*D'Onofrio v. Costco Wholesale Corp.*,
964 F.3d 1014 (11th Cir. 2020).......................................................................33

*Duke v. Uniroyal Inc.*,
928 F.2d 1413 (4th Cir. 1991).........................................................................53

*Duval v. Comm'r of Soc. Sec.*,
628 F. App'x 703 (11th Cir. 2015)..................................................................19

*Edgar v. JAC Products, Inc.*,
443 F.3d 501 (6th Cir. 2006)...........................................................................43

*Equal Employment Opportunity Commission v. Exel, Inc.*,
884 F.3d 1326 (11th Cir. 2018).......................................................................49

*Equal Emp. Opportunity Comm'n v. STME, LLC*,
938 F.3d 1305 (11th Cir. 2019).......................................................................18

*Farley v. Nationwide Mutual Ins. Co.*,
  197 F.3d 1322 (11th Cir. 1999).........................................................52

*Finlay v. U.S. Postal Serv.*,
  EEOC Appeal No. 01942985 (Apr. 29, 1997)...............................53

*Frazier-White v. Gee*,
  818 F.3d 1249 (11th Cir. 2016).......................................................36

*Geter v. Schneider Nat'l Carriers, Inc.*,
  No. 22-11285, 2023 WL 7321610 (11th Cir. Nov. 7, 2023).........31

*Graham v. State Farm Mut. Ins. Co.*,
  193 F.3d 1274 (11th Cir. 1999)...............................................40, 43

*Graves v. Brandstar, Inc.*,
  67 F.4th 1117 (11th Cir. 2023).......................................................41

*Gulisano v. Burlington, Inc.*,
  34 F.4th 935 (11th Cir. 2022).........................................................12

*Hernandez v. City of Hartford*,
  959 F. Supp. 125 (D. Conn. 1997)..................................................16

*Hickey v. Protective Life Corp.*,
  988 F.3d 380 (7th Cir. 2021)...........................................................41

*Holbrook v. City of Alpharetta, Georgia*,
  112 F.3d 1522 (11th Cir. 1997)...............................................29, 34

*Holland v. Gee*,
  677 F.3d 1047 (11th Cir. 2012).......................................................51

*Holly v. Clairson Indus., L.L.C.*,
  492 F.3d 1247 (11th Cir. 2007)...............................................25, 37

*Holton v. First Coast Serv. Options, Inc.*,
  703 F. App'x 917 (11th Cir. 2017)..........................................19, 20

*Hunter v. Earthgrains Co. Bakery*,
    281 F.3d 144 (4th Cir. 2002)............................................................................54

*Johnson v. Georgia Television Co.*,
    435 F. Supp. 2d 1237 (N.D. Ga. 2006)........................................................43

*Kaplan v. DaimlerChrysler, A.G.*,
    331 F.3d 1251 (11th Cir. 2003)....................................................................54

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)....................................................................55, 56

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)........................................................................................47

*Lewis v. City of Union City, Georgia*,
    934 F.3d 1169 (11th Cir. 2019)....................................................................21

*Lucas v. Duncan*,
    574 F.3d 772 (D.C. Cir. 2009) ..............................................................54, 55

*Lucas v. W.W. Grainger, Inc.*,
    257 F.3d 1249 (11th Cir. 2001)........................................................25, 30, 37

*Martinez v. Wyoming, Dept. of Fam. Services*,
    218 F.3d 1133 (10th Cir. 2000)....................................................................44

*Mazzeo v. Color Resols. Int'l, LLC*,
    746 F.3d 1264 (11th Cir. 2014)....................................................................20

*Michael v. City of Troy Police Dep't*,
    808 F.3d 304 (6th Cir. 2015)........................................................................32

*Monroe v. Fla. Dep't of Corr.*,
    793 F. App'x 924 (11th Cir. 2019)..............................................................39

*Moses v. American Nonwovens, Inc.*,
    97 F.3d 446 (11th Cir. 1996)........................................................................32

*Munoz v. Oceanside Resorts, Inc.*,
    223 F.3d 1340 (11th Cir. 2000)................................................................. 53-54

*Munoz v. Selig Enterprises, Inc.*,
    981 F.3d 1265 (11th Cir. 2020)......................................................................21

*Navarro-Ayala v. Hernandez-Colon*,
    3 F.3d 464 (1st Cir. 1993) ........................................................................54, 55

*Neely v. PSEG Texas, Ltd. Partnership*,
    735 F.3d 242 (5th Cir. 2013)..........................................................................16

*Nevada Dep't of Hum. Res. v. Hibbs*,
    538 U.S. 721 (2003).......................................................................................43

*Pace v. Capobianco*,
    283 F.3d 1275 (11th Cir. 2002)......................................................................45

*Parker v. Econ. Opportunity for Savannah-Chatham Cnty. Area, Inc.*,
    587 F. App'x 631 (11th Cir. 2014)..................................................................35

*Rabb v. Sch. Bd. of Orange Cnty., Fla.*,
    590 F. App'x 849 (11th Cir. 2014)..................................................................31

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (2002).........................................................................................41

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ............................23

*Rehrs v. IAMS Co.*,
    486 F.3d 353 (8th Cir. 2007).........................................................................30

*Richardson v. Chicago Transit Auth.*,
    926 F.3d 881 (7th Cir. 2019).........................................................................17

*Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*,
    691 F.3d 1211 (10th Cir. 2012)......................................................................29

*Rodgers v. Des Moines*,
    435 F.3d 904 (8th Cir. 2006)............................................................43

*Sandlin v. Corp. Interiors Inc.*,
    972 F.2d 1212 (10th Cir. 1992)......................................................54

*Selgas v. Am. Airlines, Inc.*,
    104 F.3d 9 (1st Cir. 1997) ...............................................................53

*Sherman v. Burke Contracting, Inc.*,
    891 F.2d 1257 (11th Cir. 1990).......................................................51

*Standard v. A.B.E.L. Servs., Inc.*,
    161 F.3d 1318 (11th Cir. 1998)..................................................36, 40

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,
    117 F.3d 1278 (11th Cir. 1997).......................................................38

*Terrell v. USAir*,
    132 F.3d 621 (11th Cir. 1998).........................................................34

*United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*,
    842 F.3d 1333 (11th Cir. 2016).......................................................12

*U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*,
    213 F.3d 600 (11th Cir. 2000).........................................................47

*Washington v. Dep't of Transp.*,
    8 F.3d 296 (5th Cir. 1993)...............................................................44

*Whitehead v. Burnside*,
    403 F. App'x 401 (11th Cir. 2010)..................................................19

*Wickware v. Manville*,
    No. CIV-13-424-D, 2014 WL 5803078 (W.D. Okla. Nov. 7, 2014) .............29

*Wilson v. S&L Acquisition Co., L.P.*,
    940 F.2d 1429 (11th Cir. 1991).......................................................52

*Winfrey v. City of Chicago*,
    259 F.3d 610 (7th Cir. 2001)...........................................................30

*Wingster v. Head*,
    318 F. App'x 809 (11th Cir. 2009)..................................................19

**Statutes:**

28 U.S.C. §1291 ...............................................................................1

28 U.S.C. § 1331 ..............................................................................1

29 U.S.C. § 621, *et seq*..........................................................1, 4, 5, 53

29 U.S.C. § 2601, *et seq*.........................................1, 3-6, 8, 14, 40-47, 58

29 U.S.C. § 2617 ............................................................................41

29 U.S.C. § 2617(a)(1) ....................................................................41

29 U.S.C. § 2617(a)(1)(i)(II).............................................................46

29 U.S.C. § 2617(b) ........................................................................41

42 U.S.C. § 1981a .......................................................................6, 47

42 U.S.C. § 12101, *et seq*........ 1, 2, 4-6, 12, 13, 16-21, 24, 25, 30, 33-39, 42, 47, 48

42 U.S.C. § 12102(1)(A)..................................................................16

42 U.S.C. § 12102(4)(B)...............................................................20, 24

42 U.S.C. § 12112(a).......................................................................16

42 U.S.C. § 12203(a) .......................................................................34

42 U.S.C. § 2000e-3 ........................................................................35

42 U.S.C. § 2000e-5(g)(2)(B) ...........................................................38

**Regulations:**

29 C.F.R. § 1630.2 ...................................................................................16

29 C.F.R. § 1630.2(j) ...............................................................................20

29 C.F.R. § 1630.2(j)(1)(ii) ......................................................................21

**Rules:**

Fed. R. Civ. P. 11 ....................................................................... 12, 54-56

Fed. R. Civ. P. 11(b)(3) ...........................................................................55

Fed. R. Civ. P. 50(b) .................................................................................5

Fed. R. Civ. P. 56(c)(1)(A) .....................................................................56

Fed. R. Civ. P. 59 ......................................................................................5

Fed. R. Evid. 701 .....................................................................................45

Fed. R. Evid. 702 .....................................................................................45

**Other Authorities:**

FRONT PAY |
U.S. Equal Employment Opportunity Commission (eeoc.gov)
(last visited June 30, 2024) .....................................................................53

Gregory P. Joseph,
*Sanctions: The Federal Law of Litigation Abuse* § 9(D) (1989) ....................... 55-56

## **JURISDICTIONAL STATEMENT**

The United States District Court for the Northern District of Alabama had jurisdiction over this action pursuant to 28 U.S.C. §1331 as it asserted claims under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*., The Family and Medical Leave Act, 29 U.S.C. §2601 *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. On March 27, 2024, the District Court entered an Amended Final Judgment determining all Plaintiff's claims. Appellants timely filed their Notice of Appeal with the District Court on April 24, 2024. This Court has jurisdiction over the appeal of the Amended Final Judgment and all preliminary orders merged therein under 28 U.S.C. §1291.

## <u>STATEMENT OF THE ISSUES</u>

1) Whether there was sufficient evidence that Plaintiff Richard McClinton was disabled under the ADA when no medical evidence connected his subjective complaints of leg pain to any underlying physiological condition.

2) Whether, when medical records provided no limitation on Plaintiff's ability to walk, McClinton could establish he was substantially limited in his ability to walk based solely on his contrary testimony.

3) Whether McClinton presented sufficient evidence that he was a qualified individual with a disability under the ADA considering his admissions that he was incapable of performing numerous routine functions of his position with or without an accommodation.

4) Whether McClinton presented sufficient evidence that allowing him to use a cane or crutches to walk and work along the length of a 60-bay unloading dock, alongside unloaders and forklift operators, was a reasonable accommodation.

5) Whether McClinton presented sufficient evidence that allowing him to work less than his full schedule was a reasonable accommodation.

6) Whether the District Court erred in concluding requesting a reasonable accommodation is protected activity under the ADA.

7) Whether the District Court erred in concluding Plaintiff had an objectively reasonable belief that his requests were required by the ADA.

8) Whether McClinton is entitled to physical pain and suffering damages under the FMLA.

9) Whether McClinton presented sufficient evidence to support an award of punitive damages.

10) Whether the District Court erred by not reducing the jury's backpay award to compensate McClinton only for the time from his discharge through the date when he would have lost his job due to the cessation of Capstone's operations and the layoff of all employees at the facility where McClinton worked.

11) Whether the District Court erred in ordering McClinton reinstated when the job he held was eliminated due to the cessation of Capstone operations at the facility where he was employed, and Capstone has no other jobs like McClinton's in the geographic area in which McClinton requested reinstatement.

12) Whether the Court erred in sanctioning counsel for Defendant for asserting McClinton's misconduct was not in "genuine" dispute for purposes of summary judgment where the only contrary evidence was McClinton's testimony denying his misconduct.

## STATEMENT OF THE CASE

The Course of Proceedings and Disposition Below

On April 22, 2020, Richard McClinton filed suit in the United States District Court for the Northern District of Alabama against his former employer, Defendant Capstone Logistics, LLC.[1] McClinton asserted Capstone violated the Americans with Disabilities Act, the Family and Medical Leave Act, and the Age Discrimination in Employment Act in regard to his employment and discharge.[2] Plaintiff amended his Complaint twice, the second time on January 19, 2021.[3] The Second Amended Complaint remained the operative Complaint thereafter.[4] Capstone duly answered McClinton's Complaints.[5]

Following discovery, on May 13, 2022, Capstone moved for summary judgment on all claims.[6] The District Court denied the motion on November 28, 2022.[7] On May 4, 2024, the District Court sanctioned Capstone's counsel for statements made in the Motion for Summary Judgment's Statement of Undisputed Material Facts.[8]

---

[1] Doc. 1.
[2] *Id.*
[3] Doc.'s 15 and 32.
[4] Doc. 32.
[5] Doc.'s 9, 17, and 36.
[6] Doc. 65.
[7] Doc. 87.
[8] Doc. 108.

On May 30, 2023, a jury trial commenced in Birmingham, Alabama.[9] Six claims were presented: 1) ADA Disparate Treatment, 2) ADA Failure to Accommodate, 3) ADA Retaliation, 4) FMLA Interference, 5) FMLA Retaliation, and 6) ADEA Disparate Treatment.[10] At the close of McClinton's case, Capstone moved for judgment as a matter of law on all claims.[11] The District Court denied the motion.[12] On June 2, 2023, the jury returned a verdict in McClinton's favor on the three ADA claims and the FMLA Interference claim awarding McClinton $3,248,000.[13] The jury returned a verdict in Capstone's favor on the FMLA retaliation and ADEA Disparate Treatment claims.[14]

On June 30, 2023, under Federal Rules of Civil Procedure 50(b) and 59, Capstone timely filed its Motion for Judgment as a Matter of Law (Renewed) and Motion for a New Trial.[15] On July 18, 2023, McClinton filed a Motion to Amend-Correct Judgment to Include Equitable Relief and a Petition for Attorneys' Fees.[16]

On March 27, 2024, the District Court issued a Memorandum Ruling deciding all motions.[17] The Court denied Capstone's motions and affirmed the jury's verdict

---

[9] Docket 5/30/2023 Minute Entry unnumbered.
[10] Doc. 158.
[11] Docket 6/1/2023 Minute Entry unnumbered. Doc. 171 pp. 89
[12] Doc. 168 p. 3.
[13] Doc. 162.
[14] *Id.*
[15] Doc. 175.
[16] Doc. 178 and 180.
[17] Doc. 198.

except to reduce the jury's award in accordance with the limit of liability established in 42 U.S.C. §1981a.[18] The District Court granted Plaintiff's motion for equitable relief, ordering McClinton reinstated to his job and awarding liquidated damages on the FMLA verdict.[19] The District Court also granted McClinton's Petition for Attorney's fees.[20] The same date, the District Court entered an Amended Final Judgment.[21] On the ADA claims, the Amended Final Judgment awarded McClinton backpay and prejudgment interest of $272,000, compensatory and punitive damages of $300,000, and ordered reinstatement.[22] On the FMLA interference claim, it awarded McClinton $200,000 in damages with an equal amount of liquidated damages.[23] Finally, it awarded McClinton $221,382.71 in attorneys' fees and expenses.[24]

Statement of Facts

Capstone employed McClinton as a Site Supervisor working in the Dollar General distribution center in Bessemer, Alabama.[25] McClinton's duties included supervising a crew of Unloaders working on the facility's receiving dock.[26] The crew

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Doc. 199.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Doc. 158 – 3 p. 1.
[26] *Id.*

unloaded goods from tractor trailers, built pallets of goods, and, using forklifts and other equipment, moved the pallets to the appropriate location.[27] For most of his employment, McClinton was assigned to the second (night) shift.[28] Each shift lasted approximately 12 hours.[29] Donald Langley, Site Manager, supervised McClinton but primarily worked the day shift.[30]

The Dollar General facility was massive encompassing approximately 1,000,000 square feet.[31] The inbound dock had 60 bays for incoming trucks to unload.[32] To properly supervise his crew, McClinton walked up and down the dock observing, coaching, and assisting where necessary.[33] He was responsible for ensuring that all Capstone's policies, procedures, and safety rules were followed by his crew.[34] In January 2019, Langley verbally counseled McClinton twice for performance deficiencies and documented those via contemporaneous emails to himself.[35]

---

[27] Doc. 167 pp. 67 ll. 22 – 25 – 68 ll. 1 - 12; Doc. 171 p. 12 ll. 1 – 25, 15 ll. 13 - 24.
[28] Doc. 167 pp. 98 l. 20 through p. 99 l. 2; Doc. 158 - 3 p. 1.
[29] *Id.*
[30] Doc. 158 – 3 pp. 1-2; Doc. 167 p. 24 ll. 20 - 23.
[31] Doc. 167 p. 67 ll. 23 - 25.
[32] Doc. 171 p. 12 ll. 12 – 14.
[33] Doc. 171 pp. 14 ll. 21 – 25, 15 ll. 1 – 9.
[34] Doc. 171 p. 18 ll. 23 – 25, p. 19 ll. 1 – 3.
[35] Doc. 156 – 4; Doc. 156 – 5 pp. 1 – 2.

On February 25, 2019, McClinton had back surgery.[36] He was on paid leave for one month following the surgery.[37] He also applied for and received short term disability benefits during this time, so he received more pay during this period than while he was actively working.[38] Langley provided McClinton the phone number to call the Human Resources Department in conjunction with his surgery, but Capstone did not affirmatively provide him with FMLA paperwork.[39]

In March, McClinton returned to work under specific physical restrictions mandated by his surgeon.[40] The paperwork he provided Capstone showed no limitation on his ability to walk or the hours he could work.[41] Capstone allowed McClinton to return to work with the restrictions.[42] But it was a busy season, and the facility was operating extra shifts.[43] As such, McClinton worked more shifts each week than he had been immediately prior to his surgery.[44] McClinton asked Langley that he be allowed to work fewer shifts, without medical support, and that the one

---

[36] Doc. 171 p. 40. ll. 7 – 9.
[37] Doc. 171 p. 48 ll. 5 – 11.
[38] Doc. 171 pp. 48 l. 5 through p. 50 l. 9; Doc. 157-2.
[39] Doc. 157 – 10; Doc. 167 p. 187 ll. 4 – 10.
[40] Doc. 156 – 13.
[41] *Id.*
[42] Doc. 171 p. 51 ll. 5 – 11.
[43] Doc. 167 p. 189 ll. 19 – 22.
[44] Doc. 167 p. 32 ll. 5 – 13.

other Site Supervisor who ordinarily worked days, be assigned to cover some of the additional shifts McClinton was working.[45] Langley denied this request.[46]

On Friday, April 12, 2019, Langley observed several safety violations by employees working under McClinton's supervision.[47] He obtained pictures of the violations from Dollar General's security cameras.[48] He emailed the pictures to his boss, Jose Fernandez.[49] They concluded that McClinton should be counseled for the safety issues.[50]

McClinton worked a shift on April 15.[51] After the shift, he awoke with pain in his leg of sufficient severity that he went to the emergency room.[52] The records of that visit show he was tested for deep vein thrombosis, but that the results were negative.[53] He was discharged after being at the emergency room for approximately five hours.[54] The emergency room provided him a return-to-work form for April 16 that contained no restrictions.[55] On April 17, McClinton was seen at his back

---

[45] Doc. 167 p. 190 ll. 2 – 9.
[46] *Id.*
[47] Doc. 167 p. 280 ll. 1 – 18.
[48] Doc. 167 pp. 280 ll. 19 – 25 – p. 281 ll. 1 – 7.
[49] Doc. 157 – 12.
[50] Doc. 167 p. 143 ll. 5 – 8; Doc. 166 pp. 121 ll. 1 - 19.
[51] Doc. 167 p. 191 ll. 6 – 12.
[52] *Id.*
[53] Doc. 156 – 16 p. 35.
[54] Doc. 156 – 15 p. 2.
[55] Doc. 156 – 9 p. 1.

surgeon's office.[56] They provided him with a work excuse again containing no restrictions.[57]

Before returning to work, McClinton advised Langley that he had been to the emergency room for leg pain and would need to use a cane or crutches to walk when he returned.[58] Langley spoke to Dollar General management about that request.[59] Langley told McClinton that he would not be allowed to use crutches or a cane.[60] McClinton also told Langley that he feared he might need another back surgery in the future.[61]

McClinton returned to work on April 18 and performed his job without a cane or crutches.[62] At the beginning of McClinton's shift, Langley presented him the counseling notice he and Fernandez had agreed upon.[63] The form was marked as a written warning and indicted that the next level of discipline would be termination.[64] McClinton testified that he told Langley since it was his first counseling notice, it should be a verbal counseling notice.[65] He further claimed that Langley agreed and

---

[56] Doc. 167 pp. 191 ll. 23 – 25 – 192 ll. 1 – 5; Doc. 156 – 9 p. 2.
[57] Doc. 156 – 9 p. 2.
[58] Doc. 167 p. 194 ll. 7 – 15.
[59] Doc. 167 p. 54 ll. 1 – 5; .
[60] Doc. 167 p. 52 ll. 8 – 10; p. 194 ll. 11 – 15.
[61] Doc. 167 p. 195 ll. 4 – 8.
[62] Doc. 167 p. 194 ll. 20 – 24.
[63] Doc. 167 p. 195 l. 11 through 196 l. 10.
[64] Doc. 157 – 13 p. 1.
[65] Doc. 167 p. 197 ll. 3 – 15.

used a pen to change the form.[66] Langley denied that he changed the form and testified Plaintiff did.[67] The changes were made in blue ink, the color pen McClinton used to sign the notice.[68] Langley signed the notice in black ink.[69] McClinton testified that Langley had momentarily lost his pen and so had used McClinton's to make the change.[70] Langley forwarded a copy of the notice to Fernandez that evening.[71]

The following morning, April 19, Langley called Fernandez and told him that he had discovered changes to the form and that McClinton had made the changes.[72] During this conversation, Fernandez and Langley agreed to discharge McClinton for violating Capstone's policy against falsifying company documents.[73] Capstone discharged McClinton on April 22, 2019.[74]

In February 2022, Capstone ceased operations at the Dollar General facility and discharged all its employees there.[75] It had no other operations in the area to which it could transfer employees.[76]

---

[66] *Id.*

[67] Doc. 167 p. 142 – 143; Doc. 167 p. 150 ll. 14 - 18.

[68] Doc. 157 – 13 p. 1.

[69] *Id.*

[70] Doc. 167 p. 197 ll. 3 – 15.

[71] Doc. 167 p. 46 ll. 21 – 25 - p. 47 ll. 1 – 4.

[72] Doc. 166 p. 125 l. 15 through p. 126 l. 7; Doc. 167 pp. 155 l. 8 through 156 l. 9.

[73] *Id.*

[74] Doc. 158 – 3 p. 1.

[75] Doc. 168 p. 71 ll. 24 – 25 – p. 72.

[76] *Id.*

Standard of Review

"When the Court reviews a jury verdict, the Court also reviews the sufficiency of the evidence de novo. The court must view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences and credibility choices in favor of the jury's verdict. The relevant question is whether any rational trier of fact could have ruled in favor of the prevailing party. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. The Court also reviews de novo the district court's decision on a motion for judgment as a matter of law.

A decision to alter or amend a judgment is reviewed for abuse of discretion, unless the ruling turns on a question of law. If that is the case, this Court reviews the question of law de novo. The district court's construction of a statute, such as the ADA, is likewise reviewed de novo. The Court reviews the district court's determination regarding equitable remedies for abuse of discretion." *United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016) (citations omitted).

The district court's imposition of Rule 11 sanctions is reviewed for abuse of discretion. *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

McClinton presented no medical evidence to establish the existence of an underlying physical impairment that caused him limitations, *i.e.*, a disability. Instead, McClinton only presented evidence that he had pain, and the pain limited his ability to walk. Pain is not a physical impairment; it is a symptom. Even were it an impairment, McClinton offered no evidence of how his ability to walk was limited in comparison to the average person and so failed to show he was substantially limited.

McClinton eschewed relying on other physical restrictions from his back as evidence of a disability. Those restrictions prevented him from performing essential functions of his job, such as lifting 50 pounds, bending, squatting, and twisting. To the extent McClinton bases his disability on his back condition, he presented no evidence of any accommodation that would have allowed him to perform these functions and he was not a qualified individual with a disability.

McClinton's ADA retaliation claim fails because requesting an accommodation is not opposing a practice made unlawful by the ADA. McClinton pleaded that he protested the denial of his accommodation requests, but he presented no evidence at trial to support this claim.

The retaliation claim also fails because McClinton could not have a reasonable, good faith belief he was disabled, a qualified individual with a disability, and that the accommodations he requested were reasonable.

McClinton's FMLA interference claim fails because he presented no evidence of any monetary damages caused by the interference. The District Court improperly upheld the jury's verdict on the theory that McClinton showed harm through an exacerbation of his back injury. But the FMLA does not provide damages for this type of harm. Additionally, even if the verdict were valid, the court erred by not reducing the award to the statutory maximum of 12 weeks of salary.

McClinton did not present sufficient evidence to support an award of punitive damages against Capstone. Particularly, there was no evidence the decision maker was sufficiently high in the corporate structure to impute his conduct to the employer. The District Court improperly refused to apply this precedent based on an incorrect claim that the pattern jury instructions do not incorporate it.

The District Court erred in not reducing the back pay award and in ordering reinstatement where the unrefuted evidence showed Capstone ceased its operations and that McClinton would not have continued to be employed following February 2022.

The District Court erred in sanctioning counsel for Defendant for contending there was no "genuine" dispute of fact over McClinton's misconduct.

## ARGUMENT AND LAW

**I.    MCCLINTON'S ADA CLAIMS**

**A.    MCCLINTON DID NOT PRESENT SUFFICIENT EVIDENCE TO PROVE THE EXISTENCE OF A DISABILITY**

1.    No Evidence Connected McClinton's Leg Pain to a Physical Impairment

A plaintiff must have a "disability" to be covered by the ADA. 42 U.S.C. §12112(a). While the Americans with Disabilities Act Amendments Act made it less demanding for a plaintiff to establish the existence of a "disability," it did not eliminate the requirement. *Neely v. PSEG Texas, Ltd. Partnership*, 735 F.3d 242, 245 (5th Cir. 2013). A plaintiff must still establish a "substantial limitation" caused by a "physical impairment."[77] 42 U.S.C. §12102(1)(A).

A physical impairment is "[a]ny physiological disorder or condition, … affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine…." 29 C.F.R. §1630.2. "[A] physiological disorder is an abnormal functioning of the body or a tissue or organ." *Hernandez v. City of Hartford*, 959 F. Supp. 125, 130 (D. Conn. 1997).

---

[77] The jury was not charged on the "record of" and "regarded as" methods of establishing a disability. Doc. 158 pp. 10 – 12; 29 – 30.

Pain is not a physiological disorder; it is a symptom of a physiological disorder.

A plaintiff cannot establish an ADA disability through symptoms unconnected to a physiological disorder. For example, circuit courts have found that obesity, even when substantially limiting an individual's major life activities, is not a disability without evidence it arises from a physiological disorder. *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 887 - 890 (7th Cir. 2019) (collecting cases).

This conclusion is more compelling when the symptom is pain. Obesity can be measured and the limitations it creates observed. Pain cannot. There is a difference between a condition that makes walking impossible, such as an amputation, and a sprained ankle that makes walking painful, but not impossible.

McClinton claimed that his "physical impairment" was the "shooting pains down his back and legs" and that these "substantially limited" his ability to walk.[78] While McClinton testified about his leg pain, he did not offer evidence of a medically diagnosed condition causing the pain he claims he was experiencing.[79] The medical records he submitted ruled out deep vein thrombosis as a cause and provided no

---

[78] Doc. No. 158-1 pp. 11-12; 30. The pattern instructions provide blanks to fill in with the alleged impairment and major life activity and this is what was submitted in those spaces. Doc. No. 142 p. 26; 47.

[79] Doc. 167 pp. 189 l. 19 through p. 190 l.; p. 191 l. 6 through 192 l. 5; p 193 l. 24 through 194 l. 1; p. 207 ll. 3 – 6; p. 212 l. 21 through 213 l. 19.

other cause for the subjective pain.[80] Indeed, while Mr. McClinton had undergone back surgery two months prior, he offered no medical evidence connecting his post-surgery pain to his back.[81]

Mr. McClinton's leg pain in April 2019 could have resulted from his back or from a strained muscle. But a strained muscle that causes pain and a resulting difficulty walking for a few days is not a disability. *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019) ("an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor"). Otherwise, the ADA would require accommodation of every medical condition that prevents an employee from working for a day or two. Further, if having a disability does not require the existence of an underlying physiological condition, then employees will be free to rely on unchallengeable subjective complaints of pain to demand accommodations from employers. McClinton's failure to submit evidence that a physiological condition caused his limitations necessarily defeats the conclusion he had a "disability" protected by the ADA.

---

[80] Doc. 156 – 16 p. 35.
[81] *Id.*

2.    <u>If McClinton's Back Condition Is Considered as His Physical Impairment, No Evidence Proved It Caused Limitations</u>

Even if McClinton had relied on an underlying physiological condition in his back as his physical impairment, no evidence connected his walking limitations to that condition. To establish a disability, a plaintiff must prove that the underlying physical impairment caused the limitations. *Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 922 (11th Cir. 2017) (ADA claim failed for lack of evidence linking back condition to limitations). The only evidence McClinton submitted containing a diagnosis of his back condition is a medical record from an appointment *prior* to his surgery.[82] He submitted no medical evidence that the leg pain he experienced from April 15 - 17, 2019, or at any time after his surgery, was caused by his back. The medical records suggest otherwise: his back surgeon never identified any walking restriction from his surgery and sent him for an analysis to determine if the leg pain was caused by deep vein thrombosis.[83]

In fact, *McClinton never testified his leg pain was caused by his back condition*. Instead, he merely testified he had back and leg pain.[84] Thus, there is zero

---

[82] Doc. 156 – 17 pp. 1 – 4.

[83] Doc. 156-15. "He was sent by Dr. Chambers again today to having [sic] another DVT rule out performed."

[84] Doc. 167 p. 212 – 213; 215. Had McClinton tried to testify to the source of his pain, it would have been impermissible as a lay opinion on medical causation. *See Wingster v. Head*, 318 F. App'x 809, 814 (11th Cir. 2009); *see also Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015); *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam).

evidence, even incompetent evidence, connecting McClinton's leg pain two months after back surgery to a condition in his back; therefore, under *Holton,* his ADA claims fail. *Compare Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1269 (11th Cir. 2014) (plaintiff presented sufficient evidence of disability where his doctor "explained Mr. Mazzeo's medical condition, what specific pain the condition caused, and the limitations on 'major life activities' (as that term is broadly defined by the ADA) resulting from the condition and pain.")

      3.   McClinton's Testimony that Contradicted the Medical Releases from His Physicians Was Insufficient to Support the Conclusion He Was Substantially Limited in His Ability to Walk

McClinton chose to establish his disability by claiming he was "substantially limited" in his ability to walk.[85] The ADA does not define "substantially limits," but requires it be interpreted "consistently with the findings and purposes of the ADA Amendments Act of 2008." 42 U.S.C. §12102(4)(B). Following the ADA Amendments Act, the EEOC amended its regulations to remove the definition of "substantially limits" and replaced it with considerations for assessing whether an individual is "substantially limited." 29 C.F.R. §1630.2(j). So "substantially limited" no longer has a regulatory definition. The closest the regulation comes is the explanation of what does not prevent a condition from being "substantial." "An

---

[85] Doc. 142 p. 26.

impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. §1630.2(j)(1)(ii). And the regulation suggests "substantially limiting" must be based on a comparison of the abilities of average people: "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.*

Thus, to establish the existence of a "substantial" limitation, this Court has required plaintiffs present evidence of "the timing, frequency, and duration of … impairments. Without this evidence, we cannot assess whether [the plaintiff] meets the definition of disabled under the ADA." *Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1273 (11th Cir. 2020). *See also Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1180–81 (11th Cir. 2019) ("[T]he record here is devoid of evidence of the severity, frequency, and duration of these episodes. Nor is there any evidence of the extent to which they limit Ms. Lewis's ability to sleep or that could lead a reasonable jury to conclude that Lewis is substantially limited in a major life activity.").

McClinton's testimony about the limits of his ability to walk does not provide sufficient evidence to prove he has a disability. He testified about the limitations he

21

had from April 15 – April 17, 2019. He woke the morning after a shift unable to walk without his wife's assistance and went to the emergency room where he had to use a wheelchair.[86] He told Langley he was "having a big problem walking and being steady…."[87] When he returned to work two days later, he was "barely walking."[88] But he said nothing about how long this level of impairment lasted and he performed his job on April 18 without a walking aid.[89]

McClinton's testimony then moved to his current symptoms, that he claims have been present since that time, and those symptoms are less restrictive than he described for that three-day period. "I can only walk for so long without it starting to hurt."[90] "And walking is the same as that. Too long, too far, too much, again, that, like I said, way too much. And I have to go and try to do one or the other, lay down or sit."[91] He did not explain how long is too long, how far is too far, or how much is too much. This testimony is insufficient to establish he is substantially limited in walking because it proves nothing about how McClinton's ability to walk compares to the average person's ability. When it comes to walking, every person has a too long, a too far, and a too much.

---

[86] Doc. 167 p. 191 ll. 6 – 12.
[87] Doc. 167 p. 194 ll. 7 – 15.
[88] Doc. 167 p. 208 ll. 13 – 19.
[89] Doc. 167 p. 194 ll. 20 – 24.
[90] Doc. 167 p. 213 ll. 2 – 4.
[91] *Id at* ll. 15 - 17.

This vague testimony's sufficiency must also be assessed against the **three** doctor's releases McClinton provided Capstone that identified no restriction on McClinton's walking.[92] "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses'." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

In concluding McClinton presented sufficient evidence of disability, the District Court misinterpreted the neurosurgeon's release.

> Although the Fit for Duty Release form that Mr. McClinton's neurosurgeon, Dr. Chambers, completed on March 18, 2019, stated that Mr. McClinton was able to "[f]requently walk/stand 3 to 6 hours on concrete flooring," Doc. 156-13 at 1, it was possible for the jury to view that statement as being consistent with a substantial limitation in Mr. McClinton's ability to walk, as compared to most people in the general population.[93]

This conclusion misinterprets the release as stating McClinton could "*only* walk 3 to 6 hours." It did not. The release's reference to walking "3 to 6 hours" is the job's requirement, not a limit of McClinton's ability. The doctor did not say for how long or under what circumstances McClinton could walk generally, but that he could do the walking the job required. The District Court ignored the lack of restrictions in

---

[92] Doc.'s 156-13, 156-9 pp. 1-2.
[93] Doc. 198 p. 10.

the release McClinton presented from the emergency room because it "also recorded that Mr. McClinton had 'leg pain' that had persisted for '1 [week].'"[94]  But that reference is merely *McClinton's statement to his physician*, written down in his medical records.[95] Ignoring the absence of restrictions on a form that explicitly includes a place for restrictions replaces the doctor's medical judgment with the court's. The District Court also completely ignored the third release that contained no restrictions. McClinton's testimony did not establish a substantial limitation in his ability to walk, and the medical evidence revealed no limitation at all. As such, McClinton did not submit enough evidence to meet the ADAAA's low bar of establishing a disability.

### B.  MCCLINTON DID NOT PRESENT SUFFICIENT EVIDENCE TO PROVE HE WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY

#### 1.  The Test for Assessing Whether an Individual Is a Qualified Individual with a Disability

McClinton's ADA disparate treatment and failure to accommodate claims required he prove he was a "qualified individual with a disability."[96] To do so, he "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of

---

[94] Doc. 198 p. 11.
[95] Doc. 171 pp. 56 – 57.
[96] Doc. 158-1 p. 10; 28.

his job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). "Thus, if [the plaintiff] is unable to perform an essential function of his ... job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.*

> Essential functions are "the fundamental job duties of the employment position the [disabled employee] holds or desires." Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis. We have previously stated that, in conducting this inquiry, "consideration shall be given to the employer's judgment ... and if an employer has prepared a written description ... for the job, this description shall be considered evidence of the essential functions of the job."

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (cleaned up). "Essential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007) (cleaned up).

2.     McClinton's Job Duties

McClinton's job was Site Supervisor in a Dollar General distribution center.[97] He supervised between fourteen to twenty employees unloading in-bound goods from trucks on a loading dock with 60 receiving bays.[98] The employees build pallets

---

[97] Doc. 171 p. 18 ll. 10 – 14.
[98] Doc. 167 pp. 174 l. 24 through p. 175 l. 6; Doc. 171 pp. 12 l. 1 through p. 14 l. 11.

of the goods and use forklifts and pallet jacks to move the goods.[99] McClinton's job required him to walk the dock – more than two football fields in length - for the majority of his twelve-hour shift supervising the employees.[100] He was responsible for training the associates and demonstrating how to do their jobs safely.[101] Additionally, he had to assist the associates when necessary, which included lifting boxes of goods.[102] The job description identified lifting 50 pounds and operating power equipment as physical requirements of the job.[103]

### 3.    McClinton's Limitations[104]

When McClinton returned from his back surgery leave, his doctor indicated he could not do the following:

- Frequently lift, push, pull and carry cases ranging from 5 to 80 pounds in weight for a sustained time of up to 3.5 hours between breaks while stooping, bending, lumbar twisting and kneeling, lifting overhead and bending repeatedly;

- Frequently squat, kneel, bend and twist 3 to 6 hours in 8-hour work day;

---

[99] Doc. 171 p. 15 l. 13 through p. 16 l. 6.
[100] Doc. 171 p. 14 l. 12 through p. 15 l. 9; Doc. 167 p. 68 ll. 17 – 19.
[101] Doc. 157 - 1 p. 1; Doc. 157 - 14 p. 1.
[102] Doc. 171 p. 21 l. 1 through p. 23 l. 2.
[103] Doc. 157 -1 p. 2.
[104] It is unclear why McClinton did not offer these limitations to support his claim to be "disabled" at trial, but he did not and so Capstone has not included them as part of the existence of a disability analysis. Nevertheless, the evidence was admitted and remains relevant to whether McClinton was qualified.

- Occasionally sit up to 3 hours on power equipment (forklift, pallet jack);

- Handle the movement of pallets and cases of product on and off pallets;

- Proper stacking of cases on pallets in orderly fashion to ensure safety of other (stacking evenly to avoid tip over);

- Handle the movement of pallets and cases on and off trailers on a forklift or pallet jack without hitting sides of trailer, other pallets, people or equipment.[105]

McClinton acknowledged he could not perform these activities.[106] He further admitted that these activities were part of his duties.[107]

### 4.    That Duties Are Not the "Principal Accountabilities" Does Not Mean They Are Not Essential Functions

The District Court acknowledged McClinton's admission he could not do some parts of his job.[108] Nevertheless, it relied on two pieces of evidence to uphold the jury's conclusion these tasks were not "essential functions." First, that Capstone used the Unloader return-to-work form when obtaining McClinton's post-operative

---

[105] Doc. No. 156-13 p. 1. These restrictions were based on a fit for duty release for the position Plaintiff supervised, not his position. However, that does not undermine the validity of the doctor's restrictions.

[106] Doc. 171 p. 51 l. 4 through p. 53 l. 1.

[107] Doc. 171 p. 53 ll. 5 – 8.

[108] Doc. 198 p. 15.

restrictions from his doctor. Second, that McClinton could perform the "principal accountabilities" listed in the job description.[109] Neither holds water.

Capstone did not argue that the Unloader medical release was the arbiter of McClinton's duties. Rather, it evidenced what he could not do. McClinton admitted these restrictions were accurate.[110] The restrictions are what they are and cannot be ignored simply because they were on a form designed for a different job. Regardless, McClinton admitted that the listed activities were part of his duties.[111]

That McClinton could perform the "principal accountabilities" (Capstone's term of art) of his job is irrelevant.[112] "Qualified" analyzes what an employee *cannot* do. An employee who can perform 9 of 10 essential functions of his job is not a qualified individual because he cannot perform one.

Capstone's supervisors needed to be able to perform the same tasks as the unloaders, but they would perform those tasks for less time.[113] It is common sense that a supervisor who must demonstrate safe lifting techniques must be able to safely lift. And the job description notes that McClinton's role requires lifting 50 pounds, a task McClinton testified he could not do.[114] McClinton further admitted that prior

---

[109] Doc. 198 p. 15.
[110] Doc. 171 pp. 51 l. 12 through p. 53 l. 8.
[111] Doc. 171 p. 53 ll. 5 – 8.
[112] "Principal accountabilities" is a term taken from McClinton's job description. Doc. 157 – 1.
[113] Doc. 166 p. 147 l. 18 – p. 149 l. 4.
[114] Doc. 171 p. 58 ll. 22 – 25.

to his surgery, he performed the tasks in the Unloader job description, but that he could no longer perform them.[115] The fact these tasks may have been infrequent does not mean they were not essential. *Cremeens v. City of Montgomery, Alabama*, 427 F. App'x 855, 858 (11th Cir. 2011) ("Fire Investigators may engage in fire suppression activities infrequently, but that does not mean firefighting is a nonessential function of the position."); *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1527 (11th Cir. 1997) ("Even assuming that an Alpharetta police detective spends a relatively small amount of time performing the type of field work that Holbrook concedes he cannot undertake … the collection of all evidence at the scene of a crime is an essential function of being a police detective in the City of Alpharetta."). *See also Wickware v. Manville*, No. CIV-13-424-D, 2014 WL 5803078, at *8 (W.D. Okla. Nov. 7, 2014) (finding that an essential function of a relief foreman position was to be qualified to perform all the positions he was to supervise in relief).

Capstone temporarily excused McClinton from performing these duties upon his return. But Capstone's modification of McClinton's position is not evidence the functions were not essential. *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1217 (10th Cir. 2012) ("a plaintiff cannot use her employer's tolerance of her impairment-based, ostensibly temporary nonperformance of essential duties

---

[115] Doc. 171 pp. 51 l. 12 through p. 53 l. 8.

as evidence that those duties are nonessential. To give weight to such a fact would perversely punish employers for going beyond the minimum standards of the ADA by providing additional accommodation to their employees."). *See also Rehrs v. IAMS Co.*, 486 F.3d 353, 358 (8th Cir. 2007); *Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001). "Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 n.3 (11th Cir. 2001). While McClinton could perform *some* parts of his job, the evidence unequivocally established he could not perform *all* the essential functions of his job.

### 5. McClinton Presented No Evidence of a Reasonable Accommodation for his Walking Limitations

McClinton's failure to accommodate claim focused solely on the walking element of his job. As an accommodation of this limitation, he claimed he should have been allowed to work fewer hours and/or to be allowed to use a cane or crutches while performing his job.[116] Both claims fail as a matter of law because McClinton presented no evidence these accommodations would have allowed him to perform the essential functions of his job.

---

[116] Doc. 167 p. 214 ll. 19 – 24, p. 190 ll. 2 - 9; Doc. 171 p. 53 ll. 14-15.

McClinton's job description explicitly states that the job requires 40+ hours per week.[117] At the time of his surgery, McClinton was scheduled to work 48 hours, Monday through Thursday, 6 p.m. to 6 a.m.[118] The schedule Capstone employees were required to be present at the facility was dictated by Dollar General's operations.[119] McClinton returned from surgery during a period of higher-than-normal volume and the facility was operating extra shifts.[120] As a result, McClinton was required to work additional shifts each week.[121] Capstone employed one other supervisor at the facility for the day shift.[122] McClinton's accommodation request was to have that one other supervisor handle some of McClinton's shifts.[123] Under these circumstances, McClinton's schedule was an essential function of his job, and relieving him of working that schedule was not a reasonable accommodation. *See e.g., Geter v. Schneider Nat'l Carriers, Inc.,* No. 22-11285, 2023 WL 7321610, at *11 (11th Cir. Nov. 7, 2023); *Rabb v. Sch. Bd. of Orange Cnty., Fla.*, 590 F. App'x 849, 851 (11th Cir. 2014).

Nor was using a cane or crutches a reasonable accommodation. First, McClinton failed to prove, and did not testify, that using a cane or crutches in the

---

[117] Doc. 157-1 p. 1.
[118] Doc. 157-1; Doc. 167 p. 190 ll. 10 – 12, p. 329 ll. 16 – 21.
[119] Doc. 57-1 p.1; Doc. 167 p. 32 ll. 11 -13; Doc. 168 p. 17 - 19.
[120] Doc. 166 p. 102 – 103.
[121] Doc. 167 p. 32 ll. 5 - 13.
[122] Doc. 167 p. 31 l. 25 through p. 32 l. 4.
[123] Doc. 167 p. 190 ll. 2 – 9.

distribution center loading dock environment would be safe. Mr. Fernandez testified that using crutches on the dock would be a hazard.[124]

"The employee retains at all times the burden of persuading the jury … that reasonable accommodations were available." *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). Given an employer's obligation under OSHA to provide a safe workplace and its responsibility to pay compensation for workplace injuries, an employer's safety decision should not be challengeable **solely** by the affected employee's contrary opinion. *Cf. Michael v. City of Troy Police Dep't*, 808 F.3d 304, 309 (6th Cir. 2015) ("Reasonable doctors of course can disagree—as they disagree here—as to whether a particular employee can safely perform the functions of his job. That is why the law requires only that the employer rely on an 'objectively reasonable' opinion, rather than an opinion that is correct.") It was objectively reasonable for Capstone to conclude that an individual using a cane/crutches to walk would create a safety risk in a busy 60-bay unloading dock with forklift traffic.

The cane/crutches also were not a reasonable accommodation because McClinton did not need them to perform his job. He returned to work and did his job without them on the night of April 18.[125] Nor was there medical evidence introduced supporting a need for a cane/crutches. "[I]f an employee does not require

---

[124] Doc. 166 p. 111 ll. 12 – 13.
[125] Doc. 161 p. 194 ll. 19 – 24.

an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020).

The District Court's contrary conclusion ignores core ADA principles.

> Mr. Fernandez testified that "[c]rutches on the dock are a hazard," and Mr. Langley testified that taking time off was not possible during "container season," but the jury was free to disbelieve their testimony and believe Mr. McClinton's testimony instead. Mr. McClinton testified, for example, that "not only was there a wheelchair ramp outside [the Dollar General Warehouse], but there [was] also an employee that worked for Dollar General that was in the warehouse in a wheelchair." Mr. McClinton also testified that he had to work weekend shifts in addition to his regular shift, whereas the day shift supervisor did not have to do so.[126]

McClinton's testimony of the existence of a wheelchair ramp and a Dollar General employee using a wheelchair is not evidence he could perform his job. He provided no context about the wheelchair-bound employee such as position, duties, or job location. Nor did he testify a wheelchair-bound individual worked on the unloading dock. The Dollar General distribution center is approximately 1,000,000 square feet in size. That somewhere in the building an employee could work safely in a wheelchair says nothing about the safety of McClinton's using a cane/crutches

---

[126] Doc. 198 pp. 14 – 15.

to traverse a 60-bay unloading dock most of his twelve hour shift. And the fact another employee could have been assigned McClinton's duties is antithetical to the concept of reasonable accommodation. The ADA's reasonable accommodation obligation is not a license to dictate an employer's staffing choices. "Whether a company will staff itself with part-time workers, full-time workers, or a mix of both is a core management policy with which the ADA was not intended to interfere." *Terrell v. USAir*, 132 F.3d 621, 626–27 (11th Cir. 1998). Reassigning essential functions is never required. *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1527-28 (11th Cir. 1997). Capstone was entitled to make reasonable decisions about the safety of the requested accommodations and to require McClinton to work the shifts it assigned.

### C. MCCLINTON'S RETALIATION CLAIM FAILS AS A MATTER OF LAW BECAUSE ASKING FOR AN ACCOMMODATION IS NOT OPPOSITION TO A PRACTICE MADE UNLAWFUL BY THE ADA

McClinton's ADA retaliation claim arose under 42 U.S.C. §12203(a).[127] It provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." The language is

---

[127] Doc. 32 p. 13.

virtually identical to Title VII's retaliation provision. See 42 U.S.C. §2000e-3. This court applies "the same standard to retaliation claims brought under Title VII of the Civil Rights Act of 1964 and those brought under the ADA." *Covel v. Cmty. Physicians of N. Port, P.A.*, No. 23-10853, 2024 WL 1923256, at *3 (11th Cir. May 1, 2024).[128] In interpreting Title VII's anti-retaliation provision, the Supreme Court has explained:

> The term "oppose," being left undefined by the statute, carries its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; resist; withstand," Webster's New International Dictionary 1710 (2d ed.1958). Although these actions entail varying expenditures of energy, "resist frequently implies more active striving than oppose." Ibid.; *see also* Random House Dictionary of the English Language 1359 (2d ed.1987) (defining "oppose" as "to be hostile or adverse to, as in opinion").

*Crawford v. Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009) (citation omitted). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Id.* (cleaned up).

---

[128] As of the date of his discharge, McClinton had not filed an EEOC Charge or otherwise testified, "assisted, or participated in any manner in an investigation, proceeding, or hearing"; therefore, he can only proceed under the opposition clause. *Parker v. Econ. Opportunity for Savannah-Chatham Cnty. Area, Inc.*, 587 F. App'x 631, 634 (11th Cir. 2014).

In the pre-trial order, McClinton claimed his protected activity was notifying Capstone he might need another surgery.[129] In the jury instructions, his protected activity morphed to requesting accommodations.[130] Regardless, neither of these activities constitutes "opposition" to a practice made unlawful under the ADA. There is no evidence that Mr. McClinton said anything that could be construed as "opposition" under the Supreme Court's definition. He asked for a different schedule and was told no. He took it no further. He asked to use crutches and was told no. He took it no further. He told his supervisor at some point in the future he might need another surgery. He took it no further.

Whether requesting an accommodation is protected opposition appears to be an open question in this Circuit. While three decisions of this Court have suggested such requests could be protected activity, none appear to have definitively ruled on the issue. *See e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (holding that plaintiff could not establish a retaliation claim because he did not have a good faith belief he was an individual with a disability when he requested accommodations); *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (assuming without deciding the plaintiff's request for an accommodation was

---

[129] Doc. 101 pp. 6-7. In the Second Amended Complaint, Plaintiff pled that he "complained to Langley that his denial of accommodation was unreasonable." Doc. 32 p. 15 ¶108. At trial he did not testify or provide any other evidence that he made such a statement.

[130] Doc. 158-1 p. 21.

protected expression and ruling she could not establish causation); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (skipping to second step when plaintiff alleged protected activity of asking for an accommodation and filing an EEOC Charge).

Requesting an accommodation is not "oppos[ing] any act or practice made unlawful by this chapter." There is no policy reason to contort the ADA's language to make requesting an accommodation "opposition." If an employee requests an accommodation to which he is entitled, and the employer discharges him for not being able to perform a job instead of providing the accommodation, it is liable for violating the ADA without the question of intent. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("… an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA…"). If the case involves a dispute over whether the employee was discharged for another reason, as does this matter, then the jury can be charged with assessing whether the stated reason is a pretext to avoid the duty to accommodate. This is a critical issue because an employee does not need to prove they are disabled or a qualified individual with a disability to bring a retaliation claim. *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012). A retaliation theory thus allows employers to be sued when they lawfully refuse unreasonable accommodations to employees or discharge an individual who cannot do his job because there is no accommodation.

That is the case here. When McClinton sought accommodations, he did not provide Capstone with any medical evidence supporting his requests. The accommodations he sought were not reasonable as a matter of law. This defeats his disparate treatment and failure-to-accommodate claims. But he still may assert a retaliation claim if he had a reasonable belief what he asked for was required by the law. And Capstone can be liable if his requests were a "but for" cause of the decision even if McClinton were physically incapable of doing his job.[131] In other words, if McClinton's requests were made in good faith and Capstone discharged him to avoid accommodating him, even though it was not legally obligated to accommodate him, it becomes liable for an ADA violation. Refusal to accommodate claims should not be allowed to be repackaged as retaliation claims in this way. Even if the theory were that Capstone were angry with the act of requesting accommodations, there should be no liability if the accommodations were not legally mandated. This Court has already refused to find that the act of refusing an accommodation itself cannot be the basis of a retaliation claim. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1288 (11th Cir. 1997) ("the acts Stewart describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim, and accordingly provide no basis for denying summary judgment on this issue.") The same logic should apply.

---

[131] An employer does not have the benefit of the "same decision" affirmative defense of 42 U.S.C. §2000e-5(g)(2)(B) to an ADA retaliation claim.

38

### D. PLAINTIFF DID NOT HAVE AN OBJECTIVELY REASONABLE BELIEF HE WAS ENTITLED TO THE ACCOMMODATIONS HE SOUGHT

"To establish a prima facie case of retaliation under the ADA, the plaintiff must show, among other things, that he engaged in a statutorily protected expression. The employee must have had a good faith, reasonable belief that the activity was protected by the statute." *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 928 (11th Cir. 2019). The belief must also be:

> objectively reasonable in light of the facts and record presented. Importantly, where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer ... an employee's contrary belief that the practice is unlawful is unreasonable.

*Covel v. Cmty. Physicians of N. Port, P.A.*, No. 23-10853, 2024 WL 1923256, at *3 (11th Cir. May 1, 2024) (citations omitted).

On the evidence McClinton submitted, there was no evidence to support an objectively reasonable belief that he had a disability, was a qualified individual with a disability, or that the accommodations he sought were reasonable. At the time of McClinton's discharge, there was no medical or independent evidence McClinton had any restrictions related to walking or that his back injury limited his ability to walk. Rather, the sole medical evidence provided showed: (1) no findings of the cause, or diagnosis for, McClinton's leg pain on April 15-17, 2019; and (2) McClinton was cleared to return to work with no limitations on walking. Moreover,

the accommodations that McClinton requested were not reasonable, *supra*. Accordingly, there was no evidence to support that McClinton had an objectively reasonable belief necessary to establish protected activity. *See e.g., Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

## II.    THE FMLA INTERFERENCE CLAIM

### A.    THE FMLA INTERFERENCE VERDICT MUST BE REVERSED BECAUSE IT IS AN AWARD FOR PAIN AND SUFFERING THAT THE FMLA DOES NOT ALLOW

The District Court correctly charged the jury that McClinton's FMLA interference and retaliation claims were distinct and that damages caused by his discharge could not be awarded under the FMLA interference claim.[132] But the court allowed FMLA interference go to the jury on the theory that Capstone had potentially interfered with McClinton's FMLA leave by not providing him with FMLA paperwork or time off for his February 2019 back surgery.[133] This was error because, even if true, McClinton did not offer evidence of any recoverable damages under the FMLA.

A plaintiff may not recover for a violation of the FMLA in the absence of damages. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999)

---

[132] Doc 158-1 pp. 51-54; Doc. 158-2.
[133] Doc. 169 p. 4 ll. 17 – 21.

("Even if the defendants have committed certain technical infractions under the FMLA, plaintiff may not recover in the absence of damages."). *See also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The FMLA limits monetary damages for interference claims to "wages, salary, employment benefits, or other compensation *denied or lost* to such employee by reason of the violation," or, if there is no such loss, "any *actual monetary losses* … as a direct result of the violation … up to a sum equal to 12 weeks … of wages or salary for the employee." 29 U.S.C. §2617(a)(1)(emphasis added).[134] "Thus, in order to recover under the FMLA, a plaintiff must show that he suffered damage, which (1) is redressable under §2617 and (2) results from the alleged interference." *Hickey v. Protective Life Corp.*, 988 F.3d 380, 387 (7th Cir. 2021). The jury was so instructed.[135]

McClinton testified he suffered no lost wages or benefits because he was paid for the time he took off for his back surgery *and* received disability benefits *on top of* his salary.[136] Nor did he submit any evidence of any form of actual monetary loss due to the purported interference. This should have ended this claim. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1122 (11th Cir. 2023) ("an employee doesn't suffer harm from an employer's technical non-compliance with the FMLA's notice

---

[134] The FMLA also allows for equitable relief under 29 U.S.C. §2617(b), but Plaintiff sought no such relief. Doc. 180.
[135] Doc. 158 -1 p. 53.
[136] Doc. 171 p. 48 l. 5 through p. 50 l. 9.

requirements when she receives all her requested time off and is paid for her absences."). McClinton's damage testimony at trial focused solely on the damages stemming from his discharge.[137] But the jury nevertheless awarded him $200,000 on the FMLA interference claim, the same amount it awarded as compensatory damages on his ADA claims.[138]

In denying Capstone's Renewed Motion for Judgment as a matter of law, the District Court did not identify any record evidence of economic damages supporting the jury's award. It denied the motion citing McClinton's testimony that the lack of FMLA leave interfered with the healing of his back.

> When asked about his shift on Sunday, April 14, 2019, Mr. McClinton testified that what he remembered was "being in extreme pain and very much difficulty getting around." Mr. McClinton further testified that the next day, he "could barely move," so that his wife "ended up taking [him] to the emergency room" and "wheeling [him] in a wheelchair." When asked if taking FMLA leave "would have helped assist [his] pain," Mr. McClinton replied, "I think it would have helped. It would have given my back a bit more time to try to heal better and not working six and seven days a week, that would have been a big help." at 217, Tr. 373:15–17 (Mr. McClinton testifying to his belief that receiving FMLA leave would have been "helpful" to healing his back).
>
> The jury could have credited Mr. McClinton's testimony and found that he was prejudiced and damaged by

---

[137] Doc. 167 p. 218 l. 8 through 219 l. 5.
[138] Doc. 162.

> Capstone's failure to notify him of his right to FMLA leave after he informed them about his back surgery.[139]

But the FMLA does not provide damages for physical harm or pain and suffering. "[T]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses …." *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 739–40 (2003). A plaintiff cannot recover damages for physical injuries purportedly caused by the denial of FMLA leave. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 516 (6th Cir. 2006); *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 705 (7th Cir. 2011); *Johnson v. Georgia Television Co.*, 435 F. Supp. 2d 1237, 1240–41 (N.D. Ga. 2006). Nor can a plaintiff recover for pain and suffering or emotional distress. *E.g., Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) ("…the FMLA does not allow recovery for mental distress…"); *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016) (same); *Rodgers v. Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006) (same). The jury's award cannot stand based on McClinton's testimony he was physically harmed or suffered distress because of FMLA interference.

---

[139] Doc. 198 pp. 21 – 22.

## B.    THE COURT ERRED IN RELYING ON MCCLINTON'S SPECULATION ABOUT HIS BACK INJURY

Even if harm to McClinton's back were an injury for which the FMLA allowed recovery, there was no competent evidence McClinton was harmed. The only evidence of the "harm" was McClinton's response to a hypothetical question.

> Q If Capstone would have offered you any type of leave, even intermittent leave, do you think that would have helped assist your pain?
>
> MR. KLASS: Objection, speculation.
>
> THE COURT: Overruled.
>
> A Yes, ma'am. I think it would have helped. It would have given my back a bit more time to try to heal better and not working six and seven days a week, that would have been a big help.

The court's ruling did not address the speculative nature of this testimony.

> Although Capstone characterizes Mr. McClinton's testimony regarding his recovery as "self-serving and unsupported speculation," it does not assert, or cite any case law, that Mr. McClinton's testimony by itself is insufficient to establish prejudice or damages.[140]

**But speculation is insufficient to establish any fact**. *E.g.*, *Martinez v. Wyoming, Dept. of Fam. Services*, 218 F.3d 1133, 1137 (10th Cir. 2000) ("Speculation, of course, does not suffice for evidence."); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) ("Speculative testimony is generally not admissible because it is

---

[140] Doc. 198 p. 22 (citations omitted).

not based on the witness's perception.") "A witness's opinion about an event that did not occur is mere speculation." *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011). Therefore, McClinton's belief that having additional time off would have helped his back heal is not evidence. *Cf. Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (rejecting an affidavit asserting that plaintiff believed something happened).

Moreover, the speculation is about a medical issue. Courts in this Circuit have affirmed that under Federal Rules of Evidence 701 and 702, a lay witness may not offer a medical diagnosis. *E.g., Compton v. Bach*, 374 F. Supp. 3d 1296, 1304 (N.D. Ga. 2019) (granting defendant's motion in limine to exclude lay witness testimony offering a medical diagnosis); *Atwater v. Schwartz*, 2:18-CV-146, 2020 WL 7249626, at *2 (S.D. Ga. Dec. 9, 2020) (granting defendant's unopposed motion in limine to exclude "any and all testimony given by lay witnesses regarding medical issues or medical questions").

Whether McClinton's returning to work caused an injury to his back is a medical causation question. It was error to allow McClinton to testify on this point. And it was not harmless error because it was the only evidence in the entire record that in any way connected any harm to any alleged FMLA interference.

**C.    THE JURY'S VERDICT ON FMLA INTERFERENCE MUST BE OVERTURNED BECAUSE IT IS CONTRARY TO THE STATUTORY LIMITATION ON DAMAGES FOR SUCH CLAIMS**

Even were an award of damages for FMLA interference appropriate, the judgment should be reduced to 12 weeks of McClinton's salary because he did not establish any lost wages because of the interference. Under these circumstances, the FMLA limits damages "to a sum equal to 12 weeks … of wages or salary for the employee." 29 U.S.C. §2617(a)(1)(i)(II).

The District Court refused to consider this issue because Capstone raised it only specifically in a footnote in a reply brief on its motion.[141] And the Court had warned against doing so in summary judgment motions.[142] But Capstone made the broader argument in its initial memorandum that McClinton "presented no evidence of any other [non-wage] financial harm related to not receiving FMLA leave."[143] Capstone further made the argument in opposition to McClinton's request for liquidated damages under the FMLA.[144] While the briefing could have been clearer, the issue was squarely before the Court. Assuming, *arguendo*, that McClinton had introduced evidence of "actual monetary losses" due to the FMLA interference— where he did not—it was error not to reduce the FMLA interference award to 12

---

[141] Doc. 198 pp. 19 – 20.
[142] Doc. 10 p. 15 – 21 Appendix II, Summary Judgment Motion Practice.
[143] Doc. 176 pp. 40 – 42.
[144] Doc. 188 pp. 3 – 4.

weeks' wages. And, importantly, McClinton argued the FMLA award was appropriate as *backpay*, and so Capstone focused on the issue that it was duplicative of the other backpay awards.[145] The District Court concluded it was damages for pain and suffering *sua sponte*.

## III.　DAMAGES

### A.　MCCLINTON DID NOT PRESENT SUFFICIENT EVIDENCE TO SUPPORT AN AWARD OF PUNITIVE DAMAGES

#### 1.　No Evidence Showed Langley Had Any Belief that His Conduct Violated the ADA

To uphold the punitive damage award requires finding Capstone acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a. "The terms "malice" and "reckless" ultimately focus on the actor's state of mind. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). The terms "malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. *Id. at* 535. This means "that the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (quotation marks omitted).

---

[145] *Id.*

In upholding the punitive damage award, the District Court identified no record evidence that Langley's conduct reflected awareness that his actions could violate the ADA. Instead, the court simply recounted the evidence that allowed the jury to conclude Langley did violate federal law, *i.e.*, that he manufactured a reason to fire McClinton to avoid allowing him to work using a cane or crutches.[146] This evidence does not establish the requisite state of mind. The case the District Court cited to justify the award, *Brown v. Advanced Concept Innovations, LLC*, No. 21-11963, 2022 WL 15176870, at *5 (11th Cir. Oct. 27, 2022), shows this. In *Brown*, the Court prefaced its discussion of the employer's conduct supporting punitive damages, "We begin by noting that ACI does not dispute that its managers were aware of the company's obligations to provide a reasonable accommodation." *Id*. McClinton, however, offered no evidence that Langley was aware his conduct violated the ADA.

> 2.  <u>The District Court Improperly Refused to Apply Eleventh Circuit Precedent that Langley's Conduct Cannot Be Imputed to Capstone for Punitive Damages</u>

Not every employee's discriminatory conduct will support a punitive damage award against an employer:

> The law does not allow a jury to impose punitive damages on an employer based on the decision of one who is not high enough in the corporate hierarchy simply because the jury wants to send a big corporation a big message. … Nor

---

[146] Doc. 198 pp. 27 – 28.

48

> does the law allow a jury to impose punitive damages
> simply on the basis that the decision maker was in charge
> of one of the hundreds of plants and offices that the
> employer had worldwide.

*Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 903 (11th Cir. 2011).

The District Court refused to consider evidence that Langley was not at a sufficiently high level in Capstone's organization to support the punitive damage award. It reasoned that the Eleventh Circuit punitive damage pattern jury instructions "acting in a managerial capacity" language do not include this requirement, citing *Equal Employment Opportunity Commission v. Exel, Inc.*, 884 F.3d 1326 (11th Cir. 2018).[147] It then concluded Capstone waived the right to raise this issue by not objecting to the pattern instructions. But the *Exel* Court reversed the punitive damage award under the higher management principle where the jury instructions used identical language.[148] Perhaps the instructions could be clearer, but their language does not prohibit the consideration of a decision-maker's status in the corporate hierarchy in assessing the sufficiency of the evidence for punitive damages. Removing the District Court's erroneous interpretation of the jury instructions proves that Langley was not at this level.

Langley was a Site Manager. His superior, Fernandez, supervised approximately 46 Capstone locations, just like the one where Langley was site

---

[147] Doc. 198 pp. 28 – 31.
[148] See Northern District of Georgia Case 1:10-cv-03132, Doc. 119 pp. 13 – 14.

manager.[149] Fernandez's 46 sites are a small part of Capstone's business: there are approximately 650 Capstone locations in all.[150] In other words, there are over 600 other Site Managers, besides Langley, at Capstone and his being in charge of one of 650 locations does not allow an award of punitive damages based on his conduct.

### B.    THE COURT ERRED IN NOT REDUCING THE BACK PAY AWARD AND IN GRANTING REINSTATEMENT

Unrebutted testimony at trial established that in February 2022, Capstone ceased its operations at the Bessemer Dollar General distribution center where McClinton had worked.[151] At that time, Capstone discharged all its employees working in the facility.[152] It did not have any other ongoing operations in the area to which it could transfer any employees.[153] As such, McClinton would have been discharged from Capstone on that date regardless of any discrimination. This prohibits McClinton from recovering backpay after February 2022. Currently, Capstone has only one small operation within 45 miles of Birmingham, and it does not employ Site Supervisors. This eliminates reinstatement or front pay as appropriate remedies. The District Court erred both in not reducing the backpay verdict and in ordering McClinton reinstated to a position that no longer exists.

---

[149] Doc. 166 p. 79 ll. 5 – 12.
[150] Doc. 168 p. 10 ll. 5 – 6.
[151] Doc. 168 pp. 71 ll. 23 – 24, 72 ll. 1 – 24.
[152] *Id.*
[153] *Id.*

1.    <u>Backpay</u>

A plaintiff's backpay award must be reduced if the defendant proves "by a preponderance of the evidence that plaintiff would not have been retained in some other capacity" after the plaintiff's position was subsequently abolished. *Archambault v. United Computing Systems, Inc.*, 786 F.2d 1507, 1515 (11th Cir. 1986). *See also Holland v. Gee*, 677 F.3d 1047, 1066 n. 9 (11th Cir. 2012). In *Archambault*, the defendant presented evidence that the plaintiff's position had been eliminated "as a consequence of a legitimate, non-discriminatory business decision" and that the plaintiff "would not have remained in the employ of [the defendant] after the company's reorganization." *Id*. at 1514-15.

The District Court refused to apply this principle on the basis that Capstone waived it by proposing a verdict form identifying an award of back pay as continuing to the date of the verdict citing *Collins v. Koch Foods, Inc.*, No. 20-13158, 2022 WL 1741775, at *5 (11th Cir. May 31, 2022). While *Collins* does stand for this proposition, it is an unpublished decision and not binding precedent. More importantly, *Collins* did not consider or acknowledge that backpay is equitable relief and the jury's award is merely advisory. *Brown v. Alabama Department of Transportation*, 597 F.3d 1160, 1184 n. 11 (11th Cir. 2010) (citing *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1257, 1529 n.4 (11th Cir. 1990)). The District Court had the authority to independently determine backpay, and it was error to award McClinton backpay that exceeded his actual damages.

2.    Reinstatement and Front Pay

The District Court erred in granting McClinton's motion for reinstatement despite no job existing to reinstate him to. The Court reasoned,

> Capstone argues that reinstatement is not feasible because, based on Mr. Fernandez's affidavit signed August 24, 2023, "there are currently no supervisor positions available within a 45-mile radius of Birmingham, Alabama." But neither party cites controlling precedent that the present lack of vacancy is sufficient by itself to make reinstatement inappropriate. In cases where the district court considered the fact that there was no vacancy in which to place the plaintiff, the court found other factors that made reinstatement inappropriate, such as discord and antagonism between the plaintiff and the supervisor that the plaintiff would have to work with closely, or an appearance of a conflict of interest.[154]

This conclusion is not supported by law.

"The general rule is that prospective damages are awarded in lieu of reinstatement when it is not *feasible* to reinstate the employee." *Wilson v. S&L Acquisition Co., L.P.*, 940 F.2d 1429, 1438 (11th Cir. 1991)(emphasis added).[155] The Fourth Circuit explained, "Reinstatement has also been found inappropriate when the litigation itself created such animosity between the parties that any potential employer-employee relationship was irreparably damaged; *or* when the company

---

[154] Doc. 198 p. 46 (citations omitted).

[155] In its post-verdict briefing, Capstone cited *Farley v. Nationwide Mutual Ins. Co.,* 197 F.3d 1322, 1339 (11th Cir. 1999) for this proposition with the notation "collecting cases." *Wilson* is cited by *Farley* in its collection.

was no longer in business; *or* when the particular business for which the plaintiff was qualified was no longer operating; *or* when there was no comparable position available." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991) (emphasis added). *See also Selgas v. Am. Airlines, Inc.*, 104 F.3d 9, 12 (1st Cir. 1997) (noting reinstatement might be denied due to "hostility of other employees, *or* the need for an innocent employee to be "bumped") (emphasis added). Even the EEOC in its role as arbiter of discrimination in federal employment considers hostility and lack of a position independent reasons for denying reinstatement. "The Commission in *Finlay v. United States Postal Service*, and in earlier cases cited in *Finlay*, set out three circumstances in which front pay may be awarded in lieu of reinstatement: (1) Where no position is available; (2) Where a subsequent working relationship between the parties would be antagonistic; *or* (3) Where the employer has a record of long-term resistance to discrimination efforts." *See* **FRONT PAY | U.S. Equal Employment Opportunity Commission (eeoc.gov)** (last visited June 30, 2024) (emphasis added). Accordingly, because no position like McClinton's prior position exists near Birmingham (regardless of whether such a position were opened or filled), reinstatement is not proper.

Front pay is likewise inappropriate under these circumstances. "Awarding front pay to a plaintiff who ultimately would have been terminated confers a windfall upon that plaintiff and contravenes the remedial purpose of the ADEA." *Munoz v.*

*Oceanside Resorts, Inc.*, 223 F.3d 1340, 1350 (11th Cir. 2000). *See also Bartek v. Urban Redevelopment Authority of Pittsburgh*, 882 F.2d 739, 746 (3d Cir. 1989); *Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992) (same). As such, a reversal of the order of reinstatement will not require remand for determination of front pay.

## IV.   <u>RULE 11 SANCTIONS</u>

When Capstone moved for summary judgment, it asserted that McClinton's self-serving testimony, standing alone and contradicted by documentary evidence from multiple sources, could not create a *genuine* issue of material fact to defeat summary judgment, and that the facts as set forth by Capstone compelled summary judgment be entered on its behalf. Thereafter, the District Court, *sua sponte*, sanctioned Capstone's counsel under Rule 11 for stating as undisputed fact that McClinton had falsified his disciplinary document without Langley's consent without sufficiently identifying McClinton's testimony to the contrary. This ruling was error.

"Sua sponte Rule 11 sanctions" apply only to conduct "akin-to-contempt," so they are reviewed with "particular stringency." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *see also Lucas v. Duncan*, 574 F.3d 772, 775 (D.C. Cir. 2009) (Ginsburg, Garland, Kavanaugh, JJ.); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002); *Navarro-Ayala v. Hernandez-Colon*, 3

F.3d 464, 465 (1st Cir. 1993) (Breyer, J.). Applied to Rule 11(b)(3), "[a] statement of fact can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010). "Rule 11 is intended to deter claims with *no* factual or legal basis at all," but not "creative claims, coupled even with ambiguous . . . facts." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original). In *Lucas*, the court vacated *sua sponte* Rule 11 sanctions for what the district court deemed "half-truths" in a summary judgment brief, stating:

> [Counsel's] obligation in opposing the defendant's motion was to file a separate statement "setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." ... The rules do not require him to rehearse the government's evidence, and nothing in Rule 11 imposes that added burden. Nor could the omission of that evidence have been misleading to the reader.... This is not to say that it may never be misleading to assert that something has evidentiary support without advising the court of contrary facts. But once again, context is relevant.

*Lucas*, 574 F.3d at 780-81. And in *Navarro-Ayala*, then-Judge Breyer stated, "Rule 11 normally does not require one party to uncover and to set forth the facts that support the other side's position." 3 F.3d at 467. The court went on to explain, "were it literally inaccurate, it would not matter, for Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Id.* (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D)

at 133–34 (1989) ("The focus of ... Rule [11] is the court paper as a whole, not individual phrases or sentences construed separately or taken out of context. . . . [A]t some level of analysis, every unsuccessful litigation paper contains an unsupported allegation or flawed argument.")).

Taken together, to support *sua sponte* Rule 11 sanctions for statements of fact made in a summary judgment motion, the court must find that the assertion of a particular fact as not subject to genuine dispute must be "utterly lacking support" and have "no factual or legal basis at all." *Kiobel*, 592 F.3d at 810; *Davis*, 906 F.2d at 538.

The facts Capstone claimed were not subject to genuine dispute were supported by citations to particular parts of the record as required under Rule 56(c)(1)(A) and by the District Court's Initial Order.[156] That McClinton's uncorroborated testimony contradicted some of those facts did not make assertion of them as not subject to genuine dispute without factual or legal basis. Rather, Capstone set out at length why McClinton's testimony, standing alone, could not lead a rationale trier of fact to find in his favor:

> Moreover, it is McClinton's version of events, not Capstone's, that is replete with demonstrated implausibilities and outright fabrications. Specifically, his self-serving allegation that Langley agreed to "change" the Corrective Action Notice from a final written warning to

---

[156] Doc. 10 p. 17.

> a verbal warning threatening suspension is rebutted by [at least 8 categories of evidence, as listed in 16 factual paragraphs].[157]

Nor was the District Court confused by Capstone's argument. The District Court admitted it was aware of the dispute when reading the briefs based on past familiarity with the case.[158]

Stating a fact is genuinely undisputed at summary judgment is not asserting there is no evidence in the record from which anyone could possibly conclude there is a dispute. Otherwise, every counsel who loses summary judgment because the court finds a dispute of fact exists would be sanctioned. Because Capstone's statements in its summary judgment briefing were not "akin-to-contempt" but had some factual and legal bases to support them, the District Court's sanction order was in error, and this Court should vacate it.

---

[157] Doc. 66 p. 36.
[158] Doc. 94-1 p. 14 ll. 1 – 13.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the jury's verdict in its entirety, vacate the District Court's order of equitable relief and attorneys' fees, direct the District Court to enter judgment for Capstone on all claims, vacate the District Court's sanctions order, and award such other relief as it deems just and proper. Alternatively, if liability is sustained, the Court should reduce the backpay award, reduce the FMLA interference award, and reverse the awards of punitive damages and reinstatement.

Respectfully submitted,

*s/Edward F. Harold*

Edward F. Harold
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, LA  70170
(504) 522-3303 – Telephone
(504) 592-3850 – Facsimile

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

    32(a)(7)(B)(i) because:

    > this brief contains <u>12,790</u> words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

    and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    > this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Office Word</u> in <u>Times New Roman</u>, <u>14-point</u>.

*s/Edward F. Harold*

Edward F. Harold

FISHER & PHILLIPS LLP

201 St. Charles Avenue, Suite 3710

New Orleans, LA  70170

(504) 522-3303 – Telephone

(504) 592-3850 – Facsimile

*Counsel for Appellants*

<u>**CERTIFICATE OF FILING AND SERVICE**</u>

I hereby certify that on July 3rd, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system

Dated: July 3, 2024.

<u>*s/Edward F. Harold*</u>
Edward F. Harold
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, LA  70170
(504) 522-3303 – Telephone
(504) 592-3850 – Facsimile

*Counsel for Appellants*