# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## DOCKET NO.: 24-11261

---

RICHARD J. McCLINTON,

PLAINTIFF-APPELLEE,

v.

CAPSTONE LOGISTICS LLC,

DEFENDANT-APPELLANT.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO.: 2:20-CV-00543-AMM

---

## BRIEF OF APPELLEE RICHARD J. MCCLINTON

---

COUNSEL FOR APPELLEE:
Blake C. Edwards, Esq.
Nicole D. Edwards, Esq. MBA
**EDWARDS & EDWARDS**
**ATTORNEYS AND MEDIATORS, PLLC**
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022
Tel:  (205) 549-1379
Fax: (205) 719-4033
E-mail: nicole@edwardsattys.com
　　　　blake@edwardsattys.com

**<u>APPELLEES CERTIFICATE OF INTERESTED PERSONS</u>**

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellee hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

1. AIG Specialty Insurance Company

2. American International Group, Inc. (NYSE: AIG)

3. Capstone Logistics, LLC, Defendant

4. Capstone Logistics Holdings, Inc., parent company of Capstone Logistics, LLC

5. Edwards & Edwards Attorneys and Mediators, PLLC Law firm of Counsel, Appellee

6. Edwards, Blake C. – counsel for Appellee Richard J. McClinton

7. Edwards, Nicole D. – counsel for Appellee Richard J. McClinton

8. Fisher & Phillips LLP – counsel for Appellant Capstone Logistics, LLC.

9. Harold, Edward F.– counsel for Appellant Capstone Logistics, LLC

10. Holbrook, Richard B. – counsel for Appellant Capstone Logistics, LLC

11. Klass, David – counsel for Appellant Capstone Logistics, LLC

12.    McClinton, Richard J., Plaintiff – Appellee

13.    Manasco, The Honorable Anna M., U.S. District Judge, NDAL

14.    National Union Fire Insurance Company of Pittsburgh, Pennsylvania – potential supersedes bond company for Capstone Logistics, LLC

15.    Walker, Marion F. – counsel for Appellant, Capstone Logistics, LLC

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is not requested. Richard J. McClinton ("McClinton") proved to the satisfaction of a jury, that his employer Capstone Logistics, LLC ("Capstone"), terminated him because of his disability and interfered with his FMLA right to take leave.

Capstone is under the impression that this case presents a unique issue that could disturb the foundation of the Americans with Disabilities Act, "whether an employee's pain untethered by medical evidence to an underlying physiological condition can constitute a physical impairment." (Doc. 13, at 4, Appellant's Brief, Statement regarding oral argument). While this case is significant to the parties involved, this issue is not significant nor present in this case.

The district court correctly reduced McClinton's damages according to the statutory limits. Additionally, the jury did not improperly award McClinton compensatory damages under the FMLA. The amount of damages awarded were based upon correct findings under the law and jury charges.

Oral argument is not likely to further aid the Court's decision.

## <u>TABLE OF CONTENTS</u>

APPELLEES CERTIFICATE OF INTERESTED PERSONS……………………ii

STATEMENT REGARDING ORAL ARGUMENTS……………………………iv

TABLE OF CONTENTS…………………………………………………………..v

TABLE OF AUTHORITIES…………………………………………………...vii

STATEMENT OF THE ISSUES……………………………………………...1

STATEMENT OF THE CASE………………………………………………….5

    I.    COURSE OF PROCEEDINGS & DISPOSITION BELOW………...5

    II.    STATEMENT OF THE FACTS………………………………………...5

STANDARD OF REVIEW………………………………………………...9

SUMMARY OF ARGUMENT……………………………………………....10

INTRODUCTION………………………………………………………...12

ARGUMENTS…………………………………………………………13

    I.    MCCLINTON'S ADA CLAIMS………………………………...13

    A. MCCLINTON IS DISABLED…………………………………………….13

        1. MCCLINTON IS SUBSTANTIALLY LIMITED IN
           WALKING………………………………………………………..13

        2. EXPERT TESTIMONY IS NOT REQUIRED……………..………16

           a. MCCLINTON PERFORMED THE ESSENTIAL
              FUNCTIONS………………………………………………….16

           b. MCCLINTON REQUESTED REASONABLE
              ACCOMODATIONS…………………………………………19

B.    CAPSTONE RETALAITED UNDER THE ADA…………………...22

II.    MCCLINTON'S FMLA INTERFERENCE CLAIM SHOULD
BE UPHELD………………………………………………………..23

A.    CAPSTONE FAILED TO NOTIFY MCCLINTON OF HIS
FMLA LEAVE……………………………………………………..23

B.    CAPSTONE WAIVED ITS ARGUMENT FOR REMITTITUR…….24

C.    MCCLINTON PROVIDED EVIDENCE OF FMLA DAMAGES…..26

D.    MCCLINTON'S TESTIMONY IS SUFFICIENT FOR HIS
FMLA CLAIM……………………………………………………..33

III.    PUNITIVE DAMAGES CORRECTLY AWARDED…………………...34

A.    STANDARD FOR PUNITIVE DAMAGES…………………………34

B.    LANGLEY SHOWED RECKLESS INDIFFERENCE
TOWARDS MCCLINTON'S RIGHTS………………………………36

C.    CAPSTONE FAILED TO ESTABLISH A GOOD
FAITH DEFENSE……………………………………………………37

IV.    MCCLINTON'S BACKPAY AWARD SHOULD BE UPHELD.………39

V.    REINSTATMENT………………………………………..…………41

A.    REINSTATEMENT IS APPROPRIATE.……………………………41

B.    FRONT PAY IN LIEU OF REINSTATEMENT IS
APPROPRIATE………………………………………………………43

VI.    CAPSTONE'S RULE 11 SANCTIONS SHOULD BE UPHELD ……...44

CONCLUSION………………………………………………………...47

CERTIFICATE OF COMPLIANCE………………………………..49

## TABLE OF AUTHORITIES

## CASES

*Advanced Bodycare Sol. v. Thione Intern*,
    615 F.3d 1352, 1363 n.23 (11th Cir. 2010)…………………………....…26

*Ash v. Tyson Foods, Inc*.,
    664 F.3d 883, 904 (11th Cir. 2011)…………………………………………38

*Arthur v. King*,
    500 F.3d 1335, 1343(11th Cir. 2007)..……………………………………..9

*Berry v. Crestwood Healthcare, L.P*.,
    No. 22-11129, at *21 (11th Cir. Oct. 27, 2023) ……………………...……..25

*Bonner v. City of Prichard*,
    661 F. 2d 1206, 1207 (11th Cir. 1981)(*en banc*)……………………………47

*Brown v. Advanced Concept Innovations, LLC,*
    No. 21-11963, 2022 WL 15176870, at *5 (11th Cir. Oct. 27, 2022) ……...38

*Brown v. United States*,
    720 F.3d 1316, 1333 (11th Cir. 2013) ………………………………….…...24

*Collins v. Koch Foods, Inc*,
    No. 20-13158, 2022 WL 1741775,  (11th Cir. May 31, 2022) ……………41

*D'Onforio v. Costco Wholesale Corp*.,
    964 F.3d 1014, (11th Cir. 2020) ……………………………….…….…..21, 22

*Dudley v. Wal-Mart Stores, Inc.,*
    166 F. 3d 1317, 1323 (11th Cir. 1999) …………………………………...34

*Enwonwu v. Fulton-Dekalb Hosp*,
    286 F. App'x 586, 603 (11th Cir. 2008) ………………………..………….14

*Equal Emp. Opportunity Comm'n v Exel, Inc*.,
    884 F. 3d 1326, 1332, at 1333, (11th Cir. 2018) …………………...……34

*Ewing v. Carnival Corp.,*
    19-20264-CIV-GOODMAN [CONSENT CASE], at *23 n.4
    (S.D. Fla. May 27, 2022) …………………..…………………………47

*Frazier-White v. Gee*,
    818 F.3rd 1249, 1255 (11th Cir. 2016) ……………………………………...23

*In re Egidi*,
    571 F. 3d 1156, 1163 (11th Cir. 2009) …………………..……………….25

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526, 535 at 545 (1999) ………………………………………34, 37

*Lapham v. Walgreen Co*.,
    88F. 4th 879, 895-96 (11th Cir. 2023) …………………………………….26

*Latte Roofing & Sheet Metal, LLC v. Occupational Safety & Health Review*
    *Comm'n,* No. 20-14793, at *3 n.1 (11th Cir. Oct. 21, 2021) ………………24

*Loranger v. Stierheim,*
    10 F.3d 776, 779 (11th Cir. 1994) ………………………………...................9

*Magwood v. RaceTrac Petroleum, Inc.*,
    No. 22-12501, at *12-13 (11th Cir. Mar. 25, 2024) ………………….....20

*Miller v. Kenworth of Dothan, Inc*.,
    277 F.3d 1269, 1280 (11th Cir. 2002) ………………………………...34

*Muñoz* v. *Oceanside Resorts, Inc.*
    223 F.3d 1340 (11th Cir. 2000) ………………………………………...43, 44

*N.L.R.B. v. Walton Mfg.Co.*,
    286 F.2d 26, 28 (5th Cir. 1961) …………………………………………47

*Ramji v. Hosp. Housekeeping Sys., LLC*,
    992 F.3d 1233, 1245-47 (11th Cir. 2021) ………………….………32, 33

*Redding v. Nova Se. Univ., Inc.*,
    165 F. Supp. 3d 1274, 1281 n.7  (S.D. Fla. 2015)……..………………...46

*Richardson v. Leeds Police Dep't,*
  71 F.3d 801, 805 (11ᵗʰ Cir. 1995) ……………………………………………9

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,
  950 F. 3d 776, 782 (11ᵗʰ Cir. 2020) …………………………………………9

*Timson v. Sampson,*
  518 F. 3d 870, 874 (11ᵗʰ Cir. 2008). ……………………………..………...25

*United States v. Fiallo-Jacome*,
  874 F. 2d 1479, 1482 (11ᵗʰ Cir. 1989) …………………………..………25

*United States v. Hardman,*
  297 F. 3d 1116, 1131 (10ᵗʰ Cir. 2002) …………………………..…………….24

*United States v. Olano*,
  507 U.S. 725, 732, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993) ……………...9

*U.S. Equal Emp. Opportunity Comm'n v. W&O, Inc.*
  213 F.3d 600, 611 (11ᵗʰ Cir. 2000) …………………..……………………….38

*Watts v. Great Atl. and Pac. Tea Co.*,
  842 F.2d 307, 309 (11ᵗʰ Cir. 1988) …………………………………..……12

*Yellow Pages Photos, Inc. v. Ziplocal, LP,*
  795 F.3d 1255, 1283 (11th Cir. 2015) …………………….………………36

## <u>STATUTES</u>

29 C.F.R. §1630.2……………………..…………………….……………………16

29 C.F.R. §1630.2(n)(2)(ii)…………………………………...…………….18

29 C.F.R. § 1630.2(n),(3)(i)-(ii)  ………………………..………………..……17

42 U.S.C. § 12111(8) …………………..………………….…..……………..16

## RULES

Fed. R. Civ. P. 11…………………………..…………………………..……………11, 13, 44

Fed. R. Civ. P. 50(b) …………………………..…………………………..……………...3, 44

Fed. R. Civ. P. 59…………………………..…………………………..……………...3, 24, 44

## OTHER AUTHORITES:

http://pji.ca11.uscourts.gov
https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/
FormCivilPatternJuryInstructionsRevisedAPR2024.pdf…………………………35

## <u>STATEMENT OF THE ISSUES</u>

1.      A jury awarded McClinton a verdict of $3,248,000.00 for his claims under the ADA and FMLA. The district court reduced the verdict award to $772,000.00. Capstone argues that despite the reduction in damages, McClinton did not present sufficient evidence to the jury to recover his current damages award. Did the district court err in not overturning the jury's verdict?

2.      Under the ADA, a plaintiff is not required to meet a stringent burden to show that he is disabled. At trial the jury found that McClinton was substantially limited in his ability to walk. Capstone contends that the jury verdict should be overturned because McClinton did not present sufficient medical evidence that his leg pain caused his disability. Capstone asserts that McClinton's testimony was subjective and did not establish medical expert testimony. Did the district court err?

3.      McClinton presented sufficient evidence to convince the jury that he was a qualified individual capable of performing the essential functions of his job as site supervisor with or without an accommodation. At trial, McClinton established that he could perform duties in his job description in which the jury deemed essential functions. Should this court overturn the jury's determination that he could perform the essential functions of his job?

4.    McClinton requested two accommodations, 1) to use a cane or crutches and 2) a reduced schedule. The jury found that McClinton's requests were reasonable. Capstone argues that these accommodations were not reasonable. Should this court overturn the jury's determination that McClinton's requested accommodations were not reasonable?

5.  Eleventh Circuit precedent states that when an employee requests a reasonable accommodation he is participating in protected activity, meeting element one of an ADA retaliation claim. McClinton made two requests for reasonable accommodations thereby engaging in a protected activity. Capstone argues that his requests were unreasonable thereby negating his retaliation claim. Should this court overturn the jury's determination that McClinton did not engage in a protected activity?

6.    The district court upheld the jury's award of damages relating to McClinton's FMLA interference claim. McClinton's testimony presented sufficient evidence to find that he suffered damages, by Capstone's failure to notify him of his right to FMLA leave. Capstone argues that McClinton's testimony is self-serving and speculative negating any finding of damages. Did the district court err by finding that McClinton's own testimony was enough to uphold a finding of damages?

7.      An argument raised for the first time in a reply brief is deemed waived. Capstone did not object to the jury's award of damages on McClinton's FMLA Interference claim until it's Rule 50(b) and Rule 59 reply brief. The district court did not entertain Capstone's belated argument in its' reply brief. Should this Court entertain this waived argument on appeal?

8.      Capstone did not move the district court to reduce McClinton's FMLA interference damages. The district court decided not to reduce the damages *sua sponte*. Did Capstone waive its' argument on appeal for a reduction of McClinton's FMLA damages?

9.      Under the ADA a plaintiff may be awarded punitive damages. The plaintiff must show that his employer engaged in a discriminatory practice with malice or with reckless disregard for his federally protected rights. The jury found that Donald Langley acted with a reckless indifference to McClinton's rights under the ADA. Capstone argues that the district court should have overturned the jury's award of punitive damages because Langley was not at a "sufficiently high level in Capstone's organization." Did the district court err?

10.     Under case law and the federal rules of civil procedure, a party must object to a jury instruction prior to jury deliberations to preserve the issue on

appeal. Capstone claims that McClinton's backpay award should be reduced because the company ceased operations at his worksite in February 2022.

Capstone did not object to a jury instruction allowing an award of backpay from the date of termination to the date of the jury verdict. Did the district court err by not reducing McClinton's backpay?

11.    McClinton moved the district court for reinstatement to his full-time position, or in the alternative, front pay, if reinstatement is not a feasible remedy. The district court awarded McClinton reinstatement to his full-time position. Capstone claims that reinstatement is not possible. Did the district court err by granting McClinton reinstatement in lieu of front pay?

12.    Facts asserted by a party opposing summary judgment must be accepted as true if supported by evidentiary material. The district court reprimanded Capstone for claiming a central dispute in the case was undisputed in its' summary judgment filings. Capstone reasoned that McClinton's "allegations" were self-serving despite his deposition testimony to the contrary. Capstone asserts that no reasonable juror would have believed McClinton's "uncorroborated story." The district court reprimanded Capstone for refusing to acknowledge McClinton's conflicting deposition testimony. Did the district court err by reprimanding Capstone?

4

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

McClinton agrees with Capstone's summation of the course of proceedings and disposition section with one exception. The district court issued sanctions to Capstone's counsel on May 4, 2023, instead of May 4, 2024.[1]

## II.    STATEMENT OF THE FACTS

A proper statement of facts "must state the facts accurately, those favorable and those unfavorable to the party. Inferences drawn from facts must be identified as such." 11th Cir. R. 28-1(i)(ii). Capstone's Statement of the Facts does not meet this standard.

Capstone's statement of facts does not give contrary testimony that the jury was allowed to consider at trial. For example, when discussing McClinton's responsibilities as site supervisor, Capstone states, "McClinton's duties included supervising a crew of Unloaders working on the facility's receiving dock… He was responsible for ensuring that all Capstone's policies, procedures, and safety rules were followed by his crew."[2] This glosses over the testimony from Jose Fernandez

---

[1] Doc. 108; Appellant's Brief, at 4 n. 8
[2] Appellant's Brief, at 21-22

at trial in which he admits that McClinton was able to perform all of the "principal accountabilities" contained in his written job description.[3]

Additionally, Capstone re-iterates that in January 2019, Langley verbally counseled McClinton twice for performance deficiencies and documented those by sending emails to himself and only himself.[4] Capstone does not mention trial testimony from McClinton refuting that this method of disciplining employees runs counter to Capstone's written polices or that McClinton denies that these conversations Langley describes in his emails ever occurred.[5] Also, it omits testimony that these emails drafted by Langley (and only seen by Langley) in January 2019 were done so shortly after McClinton informed Langley that he had been approved for back surgery.[6]

Second, the portion of facts regarding McClinton's one month of paid leave following back surgery raises an inference that he was not denied a benefit to which he was entitled under the FMLA. For example, "He… received short term disability benefits during this time, so he received more pay during this period than while he was actively working…but Capstone did not affirmatively provide him

---

[3] Doc. 166, at 147:3-150:8
[4] Appellant's Brief, at 22
[5] Doc. 167, at 177:14-180:5-181:17; 181:18-183:15; Doc. 156-4 and 156-5
[6] Doc. 167, at 183:16-184:15

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

with FMLA paperwork.[7] But McClinton testified at trial that he would have had more time for his back to heal post-surgery if given FMLA leave.[8]

Third, the facts describing Langley observing safety violations committed by employees under McClinton's supervision are incomplete. The facts state that on April 12, 2019, Langley "obtained pictures of the violations from Dollar General's security cameras…He emailed the pictures to his boss, Jose Fernandez. They concluded that McClinton should be counseled for the safety issues."[9] April 12, 2019 was a Friday. The time stamp on the photographs is 10:41 p.m.[10] McClinton testified that his work shift ended at 9:00 p.m. and that he would not have worked late on Friday night because he had to be at work the following day starting at 5:00 a.m.[11]

Finally, the facts regarding the disciplinary form raise an inference that McClinton changed the form without Langley's knowledge or consent.[12] Capstone omits McClinton's testimony that he and Donald Langley were sitting "shoulder to shoulder" in the office when amending the form and that McClinton and Langley

---

[7] Appellant's Brief, at 23
[8] Doc. 167, at 207:15-18; 217:15-17
[9] Appellant's Brief, at 24
[10] Doc. 167, at 125:5-16
[11] Doc. 167, at 199:20-201:22
[12] Appellant's Brief, at 25-26

7

testify never took sole possession of the form to surreptitiously change it.[13] Also, Langley testifies that it was in his possession from the time he left the office until he arrived at home and emailed it to Jose Fernandez.[14]

Capstone's Statement of Facts does not accurately portray all of the facts that are either favorable or unfavorable to Capstone. It omits testimony or evidence that is favorable to McClinton and works to draw all inferences favorable to Capstone. McClinton will piece together the missing facts in the argument section of his brief below.

---

[13] Doc. 167, at 198:20-199:8
[14] Doc. 167, at 46:7-48:6

## STANDARD OF REVIEW

The Court reviews a district court's ruling on a motion for judgment as a matter of law de novo. "It is for the jury—not for us or the district court—to weight conflicting evidence and inferences and determine the credibility of witnesses. Thus, we examine the record in the light most favorable to the party that prevailed at trial and ask whether the evidence nonetheless points so overwhelmingly in favor of the moving party that the jury's verdict cannot stand.[15]

The denial of a motion to alter or amend a judgment is reviewed for abuse of discretion. "The only grounds for granting a motion to alter judgment are newly-discovered evidence or manifest errors of law or fact.[16]

Challenges to jury instructions or verdict form interrogatories are reviewed under plain error review.[17]

A district court's order on attorney's fees in a civil rights action is reviewed for abuse of discretion.[18]

---

[15] *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F. 3d 776, 782 brackets omitted (11th Cir. 2020)(quoting *Richardson v. Leeds Police Dep't,* 71 F.3d 801, 805 (11th Cir. 1995)
[16] *Arthur v. King*, 500 F.3d 1335, 1343(11th Cir. 2007)
[17] *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993)
[18] *Loranger v. Stierheim*, 10 F.3d 776, 779 (11th Cir. 1994)

9

## SUMMARY OF ARGUMENT

The district court did not err in making any evidentiary rulings. McClinton's testimony regarding his walking limitation was sufficient for the jury to find he was disabled. Expert testimony of medical causation was not required at trial. The jury was presented with sufficient evidence that McClinton was able to perform his essential functions of site supervisor. The jury correctly found that McClinton's accommodation requests were reasonable. Capstone failed to engage in the interactive process when considering if McClinton's requests were reasonable. By requesting reasonable accommodations, the jury correctly found that McClinton engaged in protected expression by requesting reasonable accommodations, allowing them to award him damages for retaliation.

Capstone claims that McClinton's FMLA verdict should be overturned, because it awarded him compensatory damages that are nonrecoverable under the FMLA. Capstone did not properly preserve this argument for appeal at the district court level. The jury followed the jury instructions correctly and awarded McClinton net lost wages and benefits not, compensatory damages. McClinton's testimony surrounding his recovery from back surgery gave the jury enough evidence to award McClinton damages under the FMLA.

10

The punitive damages award was properly given to McClinton. The jury instructions contain no errors of law and if Capstone contends otherwise, it did not object to the jury instructions. Further, the jury heard adequate evidence to determine that Langley and Capstone acted with a reckless indifference towards McClinton's federally protected rights.

Backpay should not be reduced to February 2022 because Capstone did not make this argument to the jury. The jury correctly awarded backpay from the date of McClinton's termination to the date of the verdict.

McClinton should be reinstated per the district court's order. The antagonistic relationship that normally exists between employer and decisionmaker does not exist in this case.

The district court did not err by issuing Rule 11 sanctions to Capstone.

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

## INTRODUCTION

The right to a jury trial is considered one of the bedrock principles in which our country was founded. Overturning a jury verdict and granting judgment as a matter of law is inappropriate when substantial evidence supports the verdict[19]. In this case, the jury awarded McClinton damages for his ADA claims. Capstone wants this jury award overturned because McClinton did not introduce evidence from a physician to prove he has a disability. Yet, this level of proof is much more stringent than what the ADA requires.

Likewise, the jury found that McClinton presented sufficient evidence to justify an award of damages under the Family Medical Leave Act in addition to punitive damages. On appeal, Capstone argues McClinton's damages award should be overturned because they are impermissible under the law. But McClinton will show below that the jury did not misapply the applicable law and if an error did occur, Capstone invited it.

The district court awarded McClinton backpay to the date of the jury's verdict plus interest. Capstone would like this calculation reduced because it contends the warehouse where McClinton worked no longer had its employees by the end of February 2022. Capstone never raised this argument in jury instructions.

---

[19] *Watts v. Great Atl. and Pac. Tea Co.*, 842 F.2d 307, 309 (11th Cir. 1988).

This would be invited error on the part of Capstone. Next, Capstone contends that the district court cannot award reinstatement as an equitable remedy to McClinton because there are no longer any supervisor positions within a 45-mile radius of Birmingham, AL. However, the trial testimony showed that Capstone did have jobs to offer McClinton[20]. As will be discussed below, lack of job positions alone, does not make reinstatement impossible.

Lastly, the Rule 11 sanctions levied against Capstone are appropriate. Capstone stated in summary judgment briefing that a point of contention which led to McClinton's termination was undisputed when it was, in fact, the most disputed fact. Instead of writing McClinton's "side of the story" in its' brief, Capstone left his testimony out completely because his testimony was "self-serving."

For all these reasons, the Court should affirm the judgment of the district court.

## ARGUMENTS

### I.     MCCLINTON'S ADA CLAIMS

A.     McClinton is Disabled.

1.     McClinton is substantially limited in walking.

---

[20] Doc. 168, at 73:8-13

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

The jury's finding that McClinton was disabled under the ADA should be upheld. Sufficient evidence was introduced for the jury to find that McClinton was substantially limited in his ability to walk.  Although Capstone argues that McClinton failed to establish that his leg and back pain caused his walking limitations, this argument ignores the basic text and caselaw of the ADA.

Capstone's two-pronged contentions are (1) McClinton did not provide evidence of a medical diagnosis limiting his walking ability and (2) McClinton's testimony standing alone is not sufficient to prove he is substantially limited in walking. These contentions have not succeeded under prior caselaw. The test for establishing a disability is not by submitting evidence of a medical diagnosis but evidence that the limitation caused their impairment in terms of their own experience.[21] At trial the jury heard evidence that, McClinton had back surgery and was out of work from February 25, 2019 to March 25, 2019.[22] McClinton was given a Fit For Duty Release Form from Langley to be completed by his neurosurgeon, which did not contain an expiration date on his restrictions.[23] In fact, his follow-up appointment with his neurosurgeon was not until April 30, 2019 and McClinton testified that it was his understanding that they would revisit the

---

[21] *Enwonwu v. Fulton-Dekalb Hosp*, 286 F. App'x 586, 603 (11th Cir. 2008)
[22] Doc. 167, at 187:1-4
[23] Doc. 167, at 187:4-188:7; Doc. 156-13

restrictions.[24] Even though McClinton was not restricted by his ability to "frequently walk/stand 3 to 6 hours on concrete flooring," it could be viewed that he could walk for a limited amount of time compared to other co-workers walking for the entire 12 hour shift.[25] The district court stated, "A jury could have viewed this as a substantial limitation in Mr. McClinton's ability to walk, as compared to most people in the general population."[26] McClinton attended the Emergency Room on April 15, 2019, due to severe pain in his leg.[27] The jury heard testimony that his work excuse from April 17, 2019 did not negate his neurosurgeon's restrictions from March 18, 2019.[28] McClinton informed Donald Langley on April 17, 2019 and April 18, 2019, that he was having difficulty walking in a steady manner.[29] Furthermore, Langley testified that he was surprised when McClinton came back to work after being in the hospital for back and leg pain[30]. The jury could have inferred from any of these possibilities that McClinton was substantially limited in his ability to walk.

---

[24] Doc. 167, at 187:20-188:7
[25] Doc. 156-13
[26] Doc. 198, at 10
[27] Doc. 167, at 191:2-22
[28] Doc. 167, at 191:23-193:20
[29] Doc. 167, at 194:6-22
[30] Doc. 167, at 52:2-10

15

2.  Expert testimony is not required.

The requirement for an in-depth review of medical causation and diagnoses runs counter to the intended purpose behind the ADA. The 2008 amendments give a liberal definition of "substantially limits" stating that it "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."[31] Therefore, McClinton was not required to present detailed medical evidence of his condition but rather how his ability to walk was limited compared to most people in the general population. The jury was presented with sufficient evidence to determine he had a disability. The jury's verdict should not be disturbed.

a)  McClinton performed the essential functions.

The jury found that McClinton was a qualified individual. McClinton proved he was a "qualified individual" whom with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds."[32]

There was sufficient evidence provided at trial that McClinton could perform the essential functions of his job. Capstone argues that the jury

---

[31] 29 C.F.R. §1630.2
[32] 42 U.S.C. § 12111(8)

16

misinterpreted what constitutes an essential job function for McClinton as site

supervisor. A multi-faceted analysis applies to what makes a job function

"essential." Such factors include "written job descriptions" and "the employer's

judgment as to which functions are essential."[33] At trial the jury was shown the

written job description of site supervisor.[34] The job description lists 11 "principal

accountabilities," just before it lists "physical requirements." Capstone posits that

common sense should have told the jury that the physical requirements portion was

also part of McClinton's principal accountabilities. But at trial Fernandez was

presented with questions concerning both the Fit for Duty Release Form and the

job description for site supervisor. Fernandez testified that the physical

requirements listed on the form were "not likely to be something that he is going to

have to do."[35] When asked about "frequently lifting, pushing, pulling, and carrying

cases ranging from five to eighty pounds" Fernandez responded, "We like them to

be able to do everything that the guys that they are overseeing…do. But it isn't his

primary function."[36] The jury was reasonable to take this testimony and apply it to

the physical requirements listed beneath the principal accountabilities on his job

description. It would not be wholly unreasonable to determine that the "ability to

---

[33] 29 C.F.R. § 1630.2(n)(3)(i)-(ii)
[34] Doc. 157-1
[35] Doc. 166, at 147:3-150:8
[36] Doc. 166, at 147:9-24

17

lift 50lbs," as a physical requirements was something that Capstone "would have liked"[ for McClinton] "to be able to do", but was not a part of his job duties nor was it part of his primary job duties.

Lastly, another factor courts consider when determining whether a job function is essential is if there are, "a limited number of employees available among whom that job function can be distributed".[37] For example this Court has held that test driving trucks was not an essential function of a truck technician. Mostly, because there were many other employees who could test drive vehicles. This court stated, "First, although FedEx employs only one Technician at its airport facility in Fort Meyers, there are nine other licensed truck drivers at that facility among whom the test-driving could be distributed."[38] In this case, McClinton testified that if all unloaders were present for work there would be 20 unloaders but normally there was an average of 14-20 unloaders.[39] The jury was free to take this testimony and determine that there were 14 to 20 other employees who could "frequently lift, push, pull, and carry 5 to 80 pounds."[40] Additionally, the jury was free to determine that the physical lifting of boxes was a miniscule part of

---

[37] 29 C.F.R. § 1630.2 (n)(2)(ii)
[38] *Samson v. Fed. Express Corp.* 746, F.3d 1196, 1202 (11th Cir. 2014)
[39] Doc. 167, at 174:22-175:6
[40] Doc. 166, at 147:9-24

18

McClinton's job duties. The jury's finding that McClinton was disabled should be upheld.

> ### b) McClinton requested reasonable accommodations.

The jury decided that McClinton's request for accommodations were reasonable. Capstone argues (1) his request for a reduced schedule was not reasonable and (2) using a cane or crutches was not reasonable.

For the first time on appeal Capstone argues that McClinton's request for a reduced schedule was unreasonable because his schedule was an essential function of his job. Capstone states, "relieving him of working that schedule was not a reasonable accommodation."[41] This misinterprets the trial testimony of McClinton. In April 2019, when returning from back surgery McClinton, as a night shift supervisor, asked Langley about "maybe splitting the weekend shifts with the day shift supervisor or maybe letting him take it completely considering I was just coming off of surgery."[42] McClinton's request was not asking for Capstone to reduce his regular 48 hour work week (per his job description), but to possibly reduce the additional 26 hours that he was working after his surgery.[43] The day shift site supervisor was not working a weekend shift at all.[44] The jury was

---

[41] Appellant's Brief, at 31
[42] Doc. 167, at 190:2-6; 214:11-24
[43] Doc. 167, at 190: 10-15
[44] Doc. 167, at 190:16-18

reasonable to determine that if McClinton's counterpart was not tasked with working 74 hours per week, than this additional amount of hours was not required for a site supervisor.

Capstone argues that the cane/crutches were not reasonable accommodations because: (1) there was no medical evidence supporting a need for cane/crutches; (2) the request interfered with the safety of other employees; and (3) the cane/crutches were not a reasonable accommodation because McClinton did not need them to perform his job. All three arguments fail. Medical evidence is not required to request a reasonable accommodation. The request for an accommodation does not have a particular form, rather an employee need only identify a statutory disability and explain generally how a particular accommodation would assist [him].[45] McClinton informed Langley on April 17 and April 18, 2019, that he was having trouble walking in a steady manner and requested crutches to walk around adequately on the job.[46] This was more than sufficient evidence for the jury to determine that McClinton informed Capstone of his limitations and an explanation of how the accommodation would help him.

---

[45] *Magwood v. RaceTrac Petroleum, Inc.*, No. 22-12501, at *12-13 (11th Cir. Mar. 25, 2024)
[46] Doc. 167, at 194:10-22

20

Next, Capstone claims that the cane/crutches were not reasonable because it interfered with the safety of other employees. According to Fernandez, the crutches would have created a safety hazard on the dock.[47] Fernandez admitted he did not engage in the interactive process to determine if McClinton's requested accommodations were reasonable.[48] The jury was entitled to consider this testimony to determine whether Capstone established its affirmative defense that McClinton's crutches/cane would have created an undue hardship. The jury was given detailed jury instructions concerning this affirmative defense.[49] The jury was reasonable in determining that Capstone did not meet its' burden of proving that McClinton's requested accommodations were unreasonable.

Finally, Capstone argues that McClinton did not need crutches to perform his job. That he worked without them when he returned to work on April 18, 2019.[50] Capstone cites *D'Onforio v. Costco Wholesale Corp.,*[51] stating, "If an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *Id.*

---

[47] Doc. 166, at 111:12-13
[48] Doc. 166, at 111:16-18
[49] Doc. 158, at 35-36
[50] Appellant's Brief, at 47-48
[51] 964 F.3d 1014, 1022 (11th Cir. 2020)

Two key points distinguish *D'Onforio* from this case.  First, Costco engaged in the interactive process by providing D'Onforio with three different accommodations. Second, D'Onforio admitted to Costco that she did not need the accommodations.[52] By her own admission D'Onforio states, "I don't have a communication problem, what do we need this for?"[53] In the present case, Capstone never offered McClinton one accommodation or express that he did not need an accommodation to perform his job. McClinton performed his job without an accommodation on April 18, 2019, because he had no other choice being denied his requests for accommodations.  McClinton testified that on April 18, 2019 his steel toe boots were the only thing keeping his feet planted in the ground.[54] The jury award for McClinton's accommodation claim should be upheld.

B.    Capstone retaliated under the ADA.

McClinton engaged in a protected activity when he requested reasonable accommodations. The jury awarded McClinton damages for his retaliation claim under the ADA. Capstone challenges the sufficiency of McClinton's retaliation claim by asserting that his request for reasonable accommodations does not constitute protected activity. Specifically, it argues that McClinton did not oppose

---

[52] *Id.*, at 7
[53] *Id.*, at 7
[54] Doc. 167, at 208:13-19

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

any unlawful act of Capstone under the ADA and that McClinton's request for a reasonable accommodation does not rise to the level of protected expression under a retaliation claim. Capstone posits the premise that this Court has never established whether requesting an accommodation is protected activity. Capstone cites *Frazier-White v. Gee,* [55] stating that this Court "assuming without deciding the plaintiff's request for an accommodation was protected expression and ruling that she could not establish causation." [56] This statement is true. The plaintiff in *Frazier-White* could not prove causation or that her request was reasonable. What this Court clearly stated right before this holding was that engaging in statutorily protected expression "may be met by a request for a reasonable accommodation." [57]

In this case, the jury found that McClinton made good faith requests for accommodations under his ADA accommodation claim. He engaged in protected activity by making these requests thereby meeting the first element of an ADA retaliation claim. The jury's award of damages on McClinton's ADA retaliation claim should be upheld.

## II.     McClinton's FMLA Interference Claim

A.     <u>Capstone failed to notify McClinton of his FMLA leave.</u>

---

[55] 818 F. 3d, 1249, at 1258 (11th Cir. 2016)
[56] Appellant's Brief, at 36-37
[57] *Id.,* at 1258

The jury awarded McClinton $200,000 for his FMLA Interference claim. Capstone argues that McClinton's jury verdict should be overturned because: (1) the jury sought to award McClinton compensatory damages not recoverable under the FMLA; (2) McClinton did not provide any evidence of damages under the FMLA; and (3) McClinton's own testimony about his back injury did not establish he suffered actual harm giving rise to a viable FMLA interference claim. Each of these arguments misses the mark.

B.    Capstone waived its argument for remittitur.

The contention that the jury sought to award McClinton compensatory damages that are unrecoverable fails for several reasons. Capstone raised this argument for the first time in its' Rule 59(e) motion in a footnote. This Court and the district court have plainly stated numerous times that footnotes are not a proper mechanism to raise arguments and are waived.[58] Second, Capstone did not present this argument in its initial brief in support of its renewed motion for judgment as a matter of law and motion for a new trial. Capstone presented this argument for the

---

[58] *Latte Roofing & Sheet Metal, LLC v. Occupational Safety & Health Review Comm'n,* No. 20-14793, at *3 n.1 (11th Cir. Oct. 21, 2021. Citing *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *United States v. Hardman*, 297 F. 3d 1116, 1131 (10th Cir. 2002)("Arguments raised in a perfunctory manner, such as in a footnote, are waived.")

first time in its' reply brief.  Substantial authority within this Circuit establishes

that arguments raised for the first time in reply briefs are not properly preserved.[59]

On appeal, Capstone maintains that it made the "broader argument in its

initial memorandum that McClinton "presented no evidence of any other [non-

wage] financial harm related to not receiving FMLA leave." [60] Capstone is of the

opinion that the argument was addressed because it was subsumed within another

argument. An argument is abandoned if "she makes only passing references to,

references it as mere background to main arguments, or buries it within other

arguments.[61]

At the district court level, Capstone failed to argue that the damages should

be reduced or remitted to a specific dollar amount.[62] Capstone failed to ask for a

remittitur in opposition to McClinton's request for interest and liquidated damages

for his FMLA Interference award (Doc. 187). Even now on appeal, Capstone does

not mention to what extent McClinton's FMLA damages should be reduced or

remitted to. Capstone merely says McClinton's verdict should be overturned

---

[59] *United States v. Fiallo-Jacome,* 874 F. 2d 1479, 1482 (11th Cir. 1989). *Timson v. Sampson,* 518
F. 3d 870, 874 (11th Cir. 2008). *In re Egidi*, 571 F. 3d 1156, 1163 (11th Cir. 2009)("BOA must not
be allowed to embellish an argument in a reply brief when it failed to fully raise and address the
issue in its initial brief. Such a practice unfairly impedes the Trustee's response. This Court
concludes that BOA waived this issue by not presenting it fully in its initial brief.
[60] Appellant's Brief, at 46
[61] *Berry v. Crestwood Healthcare, L.P.*, No. 22-11129, at *21 (11th Cir. Oct. 27, 2023)
[62] Doc. 176 pp. 36-48 & Doc. 188, pp. 2-5

25

because it somehow determined that the FMLA verdict impermissibly awarded McClinton compensatory damages. And it generally references the FLMA limits recovery to actual monetary losses but never points to a specific dollar amount that McClinton should be limited to recovering.  If a party seeking remittitur "did not point the district court to a dollar amount that would not be excessive —it is unclear how the district court could have divined such amount." [63]

C.    McClinton provided evidence of FMLA damages.

It is well settled that to prevail on an interference claim, "a plaintiff must prove that [he] was denied a benefit to which [he] was entitled under the FMLA, and that, as a result, [he] was prejudiced in some way that is remediable by either damages or equitable relief". [64] On appeal, Capstone does not challenge the district courts instruction to the jury that the interference and retaliation charges were distinct concerning damages. Now Capstone claims that "the court allowed FMLA interference go to the jury on the theory that Capstone had potentially interfered with McClinton's FMLA leave by not providing him with FMLA paperwork or time off for his February 2019 back surgery…this was error."[65] This is false.[66]

---

[63] *Advanced Bodycare Sol. v. Thione Intern*, 615 F.3d 1352, 1363 n.23 (11th Cir. 2010)
[64] *Lapham v. Walgreen Co*., 88F. 4th 879, 895-96 (11th Cir. 2023)(cleaned up)
[65] Appellant's Brief, at 40
[66] See Jury Instructions for FMLA Interference (Doc. 169, at 60:17-63:22); (Doc. 158-1, at 51-54)

During several charge conferences, Capstone adamantly objected to any language mentioning that McClinton's interference claim was based on his termination because that would subsume the interference claim and retaliation claim together.[67] Capstone objected to any language in the jury charges that referred to the termination. Thus, inviting the removal of the proposed language, "Capstone interfered with Mr. McClinton's FMLA rights by providing him with paid leave when he had his first surgery or by firing Mr. McClinton on April 22, 2019.[68] And changing it to "Capstone interfered with Mr. McClinton's FMLA rights." [69] Capstone asked the court for the proposed curative instruction before jury deliberations, "When you are considering whether or not Mr. McClinton's termination violated the FMLA, that is assessed under the interference instruction." "Any other alleged violation of FMLA is assessed under the interference instruction." [70] This diffuses the argument that the district court erroneously allowed the jury to decide whether the interference claim could be based on Capstone's failure to provide McClinton with FMLA paperwork or time off to recover for his 2019 back surgery.[71] In a charge conference, Capstone argued,

---

[67] See Doc. 171, at 106:6-10; 107:10-14;113:11-114:1; 127:4-9; Doc. 168, at 118:11-119:23
[68] Doc. 169, at 4:22-7:19
[69] Doc. 169, at 4:22-7:19
[70] Doc. 169, at 105:12-17; 109:17-23; 110:23-111:6
[71] Doc. 156-12

27

"The critical distinction between and FMLA interference claim – and it's in the jury instructions – and the FMLA retaliation claim, is an interference claim has no requirement of intent." "Right? In other words, I applied for leave, and you did not give me that leave I was entitled to. There's no question of intent I was entitled to leave.[72] "But they keep talking about three nights in the hospital three nights for back surgery. Yes, he was off for four weeks. We haven't argued that that period of time wouldn't have qualified for FMLA leave.[73]

Accordingly, the jury was free to decide whether McClinton's FMLA rights were interfered with when he had back surgery on February 25, 2019, when he returned from back surgery on March 25, 2019, or when he was denied leave after being in the hospital in April 2019.

Since the timeframe of when the jury could decide McClinton's FMLA leave has been established, a closer look at the damages awarded can take place. At trial the jury was instructed regarding FMLA interference damages:

The measure of damages for Mr. McClinton is either lost wages and benefits or other expenses incurred because of Capstone's FMLA violation. Mr. McClinton can recover lost wages and benefits, or he can recover other expenses incurred because of Capstone's actions — but not both. If Mr. McClinton proved that he lost wages or benefits because of Capstone's FMLA violation, then Mr. McClinton may recover net lost wages and benefits from the date of Capstone's violation to the date of your verdict. If you find that Mr. McClinton did not directly lose pay or benefits because of Capstone's FMLA violation, then you may award Mr. McClinton the actual monetary loss that directly resulted from Capstone's FMLA violation. This amount of damages cannot exceed 12 weeks of Mr. McClinton's wages or salary.[74]

---

[72] Doc. 171, at 106:14-20
[73] Doc. 171, at 126:15-20
[74] Doc. 158-1, at 53-54

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

McClinton testified that he made approximately $47,000.00 per year,[75] with a yearly benefit package of approximately $12,000.00.[76] Tiffany Teamer, Capstone's Human Resources Generalist, testified that McClinton paid $361.99 per paycheck in taxes.[77] Tiffany Teamer also testified that Capstone contributed $455.33 per paycheck for McClinton's benefits.[78]

The jury could have concluded that Capstone interfered with McClinton's FMLA leave on the date of his February 25, 2019 back surgery. This equals 111 pay periods from the date of the back surgery to the date of the verdict on June 2, 2023. Thus, McClinton's $47,000 per year salary divided by 26 bi-weekly pay periods in a year equals $1,807.69 per paycheck. Then multiply the $1,807.69 per paycheck salary by the 111 pay periods and this equals $200,653.85.

In a more mathematical version, the jury could have taken the $1,807.69 per paycheck salary and subtracted the $361.99 per paycheck in taxes[79] to arrive at $1445.70 in net wages. Then multiply the $1445.70 in net wages by the 111 pay periods until the verdict to equal $160,472.70. Capstone contributed $455.33 per paycheck for McClinton's benefits.[80] Then multiply the $455.33 in benefits per

---

[75] Doc. 167, at 218:8-12
[76] Doc. 167, at 218:13-219:3
[77] Doc. 153-1, at 8-9, Deposition of Teamer pg. 39:10-16
[78] *Id.*
[79] Doc. 153-1, at 8-9, Deposition of Teamer pg. 39:10-16
[80] *Id.*

paycheck times the 111 paycheck periods to get $50,541.63. Thus, making the grand total of net lost wages, $160,472.70, plus net lost benefits, $50,541.63, equaling $211,014.33.

The jury could have concluded that Capstone interfered with McClinton's FMLA leave on March 25, 2019, the date he came back to work at Capstone from his back surgery. This equals 109 pay periods from the date of the back surgery to the date of the verdict. Then multiply the $1445.70 in net wages by the 109 pay periods until the verdict to equal $157,581.30. Then multiply the $455.33 in benefits per paycheck times the 109 paycheck periods to get $49,630.97. Thus, making the grand total of net lost wages, $157,581.30, plus net lost benefits, $49,630.97, equaling $207,212.27.

The jury could have concluded that Capstone interfered with McClinton's FMLA leave on April 17, 2019, the date he told Capstone of his ER visit. This equals 107 pay periods from the date of the back surgery to the date of the verdict. Then multiply the $1445.70 in net wages by the 107 pay periods until the verdict to equal $154,689.90. Then multiply the $455.33 in benefits per paycheck times the 107 paycheck periods to get $48,720.31. Thus, making the grand total of net lost wages, $154,689.90, and net lost benefits, $48,720.31, equaling $203,410.21.

The foregoing calculations show that the jury clearly awarded McClinton,

damages that were approximately what his lost wages and benefits were from Capstone's interference. This diffuses the contention that the $200,000 awarded was compensatory damages. The jury did not award McClinton a monetary windfall. The jury correctly followed the jury instructions and awarded a proper amount of damages.

Next, Capstone argues that McClinton suffered no lost wages under the FMLA because he was paid salary during his recovery from his February 2019 back surgery and was provided with short term disability benefits.[81] Second, it argues his FMLA claim fails because he did not provide the jury with a precise dollar amount of money lost due to Capstone's interference.[82] On appeal, Capstone is not contesting whether McClinton was entitled to an FMLA benefit or whether McClinton conveyed to Capstone sufficiently that he had a right to FMLA leave. The district court credited McClinton's testimony, "being in extreme pain and very much difficulty getting around" when his wife had to take him to the emergency room in a wheelchair in April 2019, when making the decision not to overturn the FMLA interference verdict.[83] Capstone attacks the court's reasoning that the jury could have found that McClinton was prejudiced by testifying that he thinks taking

---

[81] Appellant's Brief, at 56
[82] Appellant's Brief, at 56
[83] Doc. 198, at 21

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

FMLA leave "would have helped assist his pain," [84] Capstone counters the district court's analysis by stating this is impermissible evidence that: 1) a plaintiff was damaged for physical injuries caused the by the interference of leave; and 2) a plaintiff is barred from recovering for pain and suffering or mental distress under the FMLA. A closer look at McClinton's testimony reveals he is not testifying that the denial of leave *caused* his injuries. McClinton testified, "I think it would have helped. It would have given my back a bit more time to try to heal better and not working six and seven days a week, that would have been a big help."[85] This is McClinton's testimony concerning his *recovery* from back surgery was interfered with, not the interference created new injuries.

This Court has held that this type of testimony is allowed where a plaintiff asserts that [he] would have used FMLA leave to continue physical therapy treatments and "to have longer to heal and regain [his] strength."[86] Thus, the testimony presented was not about pain and suffering but rather how McClinton was prejudiced by not being able to take twelve weeks of leave to recover from back surgery. Especially, when he went from working 48 hours per week pre-surgery to 74 hours per week post-surgery.[87]

---

[84] Doc. 198, at 21-22
[85] Doc. 167, at 207:15-18; 217:15-17
[86] *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1245-47 (11th Cir. 2021)
[87] Doc. 167, at 190:10-15

D.    <u>McClinton's testimony is sufficient for his FMLA claim.</u>

Capstone posits the premise that McClinton's testimony regarding the harm he suffered from his denial of FMLA leave is speculative due to the fact, that it concerns his opinion about whether additional time off would have allowed his back to heal. Based on Capstones reasoning, McClinton's testimony on this matter is an impermissible lay opinion. Therefore, McClinton should not have been allowed to testify to the jury about medical causation questions. This logic does not prevail as a matter of law. This Court has determined that a jury is free to believe or disbelieve a proffered medical expert's opinion over whether a plaintiff could have recovered during twelve weeks of FMLA leave. In *Ramji v. Hosp. Housekeeping Sys., LLC*, this Court decided the issue of whether a doctor's testimony was necessary for proof of damages in an FMLA case when the issue revolved around a plaintiff's physical recovery. The Court explains, "True, a reasonable jury might accept Dr. Jove's medical opinion that Ramji would not have successfully recovered during twelve weeks of FMLA leave. But a reasonable jury would not be required to agree with Dr. Jove, in view of the other evidence in in the record."[88]  Ramji's own testimony regarding the recovery of her knee was

---

[88] *Id.,* at 1246

33

substantial for a jury to decide whether she had been prejudiced by her employer under the FMLA.[89]

Furthermore, the jury could have concluded that Capstone interfered McClinton's FMLA leave because of the 24 additional hours a week McClinton was required to work post-surgery. McClinton's testimony of not being able to take time off to heal, was sufficient for the jury to decide McClinton was prejudiced by Capstone.

## III.    Punitive Damages Correctly Awarded

### A.    Standard for punitive damages.

In determining the standard that applies to an award of punitive damages, this Court has explained that it is bound by the "higher management" standard enunciated in *Dudley v. Walmart Stores, Inc.*[90] This "higher management" standard allows for an award of punitive damages if "the discriminating employee was high up the corporate hierarchy, or that higher management countenanced or approved his behavior."[91] Capstone argues that the District Court improperly allowed the punitive damages award to stand because Langley was not at a sufficiently high

---

[89] *Id.,* at 1247
[90] *Equal Emp. Opportunity Comm'n v Exel, Inc.*, 884 F. 3d 1326, 1332, at 1333, (11th Cir. 2018) (citing *Dudley v. Wal-Mart Stores, Inc.,* 166 F. 3d 1317, 1323)(11th Cir. 1999) (See *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (citing *Kolstad*, but nonetheless reiterates *Dudley's* higher management standard)
[91] *Id*., at 166 F. 3d, at 1323

level in Capstone's hierarchy. It argues that the jury instructions given at trial should factor in that Langley was not at a high enough level in the corporate hierarchy. Stating, "Perhaps the instructions could be clearer, but their language does not prohibit the consideration of a decision-maker's status in the corporate hierarchy in assessing the sufficiency of the evidence for punitive damages."[92] But the jury instructions that Capstone proposed jointly with McClinton, states, "that there is no bright-line rule about which employees act in a managerial capacity," not whether Langley held a certain status in the hierarchy.[93] The jury instructions presented to the jury are taken from the pattern generator using the Eleventh Circuit Judicial Council's Jury Instructions Builder, authorized for distribution by the Eleventh Circuit Judicial Council in August 2013.[94] The instructions have been revised several times since 2013, the last revisions were approved by the Judicial Council in November 2023.[95] The instructions regarding punitive damages in ADA cases remain the same. On appeal it is unclear whether Capstone is challenging the sufficiency of the jury instructions or lamenting the fact that they did not object to them before they were sent to the jury. Either way, based on the doctrine of invited

---

[92] Appellant's Brief, at 49
[93] Doc. 142, at 34-35
[94] See http://pji.ca11.uscourts.gov
[95] https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructions RevisedAPR2024.pdf. Last visited August 28, 2024

35

error, this Court should not review the challenge to a jury instruction that a party invited the judge to pass on to a jury.[96] This Court has stated, "The doctrine of invited error stems from the commonsense view that where a party invites the trial court to commit error, he cannot later cry a foul on appeal."[97]

B.    Langley showed reckless indifference towards McClinton's rights.

To prevail on an award of punitive damages under the ADA, McClinton must have shown that Langley showed indifference towards his federally protected rights with malice or reckless indifference. "Malice" defined as an 'intent to harm' and "recklessness" defined as "serious disregard for the consequences of one's actions.[98] The jury found sufficient evidence to award McClinton punitive damages because 1) Langley had conflicting testimony about McClinton changing the corrective action notice.[99] Then terminating Mr. McClinton for falsifying a form that McClinton and Langley agreed to change.[100] The jury was free to determine that McClinton was fired promptly after requesting to use cane or crutches on April 17, 2019.[101] The very next day, McClinton received the Corrective Action Notice

---

[96] Doc. 167, at 230:6-10; 238:9-11; 242:4-15; 244:16-24; 246:13-16; Doc. 168, at 123:15-24:5; Doc. 169:4:22-5:24
[97] *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015) (quotation omitted)
[98] *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1280 (11th Cir. 2008)(cleaned up)
[99] Doc. 167, at 150:17-18
[100] Doc. 167, at 197:3-11; Doc. 171, at 63:17-64:8
[101] Doc. 167, at 194: 10-15

on April 18.[102] On April 19, HR told Langley and Fernandez that McClinton was FMLA eligible and not to change his status[103] and Langley just so happen to find that McClinton falsified the corrective action form and immediately told Fernandez.[104] Further, Langley initiated the conversation with Jose Fernandez to terminate McClinton.[105] This timeline of events is ample evidence for the jury to decide that Langley acted with a reckless indifference towards McClinton's rights under the ADA.

    C.    <u>Capstone failed to establish a good faith defense.</u>

An employer may stave off an award of punitive damages if it can establish a good faith defense. If an employer can show that it made good faith efforts to comply with Title VII then it may not be held vicariously liable for the discriminatory employment decisions of managerial agents.[106]

Capstone does not present the argument of establishing a good faith defense to this Court for appellate review. But McClinton will however, discuss how the jury reasonably determined Capstone's lack of a good faith defense. Capstone makes a veiled attempt to escape the vicarious liability of Langley's actions by

---

[102] Doc. 167, at 48:21-49:3
[103] Doc. 153-1, at 17-18 (Teamer Depo. 74:22-76:14)
[104] Doc. 167, at 48:4-49:20
[105] Doc. 167, at 45:21-25
[106] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, at 545 (1999)

attacking the district court's reasoning for upholding the damage award. It asserts

that the district court's citing of *Brown v. Advanced Concept Innovations, LLC,* is

insufficient to establish that Langley had the requisite state of mind to discriminate

in a malicious or reckless way toward McClinton's rights.[107] Specifically, "We

begin by noting that ACI does not dispute that its managers were aware of the

company's obligations to provide a reasonable accommodation."[108] It uses this cite

to justify its assertion that "McClinton, however, offered no evidence that Langley

was aware his conduct violated the ADA."[109] To counter this argument this court

has held. Although "mere negligence as to the civil rights of employees is not

enough to justify punitive damages…" "a jury may find reckless indifference

where the employer does not admit that it knew that its actions were wrong."[110]

This Court has determined that good faith can be met by an employers'

diligence to providing effective training to managers and employees on policies

that prohibit discrimination in the workplace.[111] The testimony at trial showed that

Capstone lacked any form of diligence when providing training to employees on its

discrimination policies. Fernandez testified that once an employee completes

---

[107] No. 21-11963, 2022 WL 15176870, at *5 (11th Cir. Oct. 27, 2022)
[108] *Id.*
[109] Appellant's Brief, at 63
[110] *U.S. Equal Emp. Opportunity Comm'n v. W&O, Inc.* 213 F.3d 600, 611 (11th Cir. 2000)
[111] See *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 904 (11th Cir. 2011)

38

orientation there is no additional training on anti-discrimination policies,

"Basically, it's what's in the handbook. Part of orientation is covering these types

of subjects…And then beyond that, we're instructed that anything even remotely

possible rises to the level of harassment or discrimination, we should immediately

get with our HR department."[112] Langley admitted to training on the Capstone

handbook for two weeks but could not recall one thing about training of anti-

discrimination. He could only remember topics such as safety, quality,

housekeeping…and just general training."[113] This is ample evidence for a jury to

decide that the lack of anti-discrimination training made their policy ineffective.

Due to this negligence on the part of Capstone, a good faith defense was lacking to

refute the claim that Langley was completely ignorant that his actions were

violating McClinton's rights.

## IV.    McClinton's Backpay Award Should be Upheld

The district court was correct by not reducing backpay. McClinton was

awarded backpay plus interest in the amount of $272,000. Capstone contends that

this should be reduced because 1) "unrebutted testimony at trial established that in

February 2022 that Capstone ceased its' operations" where McClinton worked and

---

[112] Doc. 166, at 85, 4-10
[113] Doc. 167, at 21:15-18

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

2) the district court failed to realize that backpay is equitable relief to be determined by the court and it should not consider the jury's award.

Capstone waived its ability at trial to make the argument that McClinton's backpay should be reduced to February 2022 because he would have inevitably lost his job on that date. Capstone jointly proposed jury instructions to consider the "net lost wages and benefits from the date Capstone terminated Mr. McClinton to the date of your verdict."[114] Additionally, Capstone's initial proposed verdict form asked whether "Mr. McClinton should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict."[115] Capstone agreed to keep this language in the final form that was submitted to the jury asking whether, "Mr. McClinton should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict."[116] Capstone waived this argument by not objecting to the jury instructions.

Capstone also waived this argument by not providing any argument to the contrary when McClinton asked the jury for $272,000 in backpay. Capstone never explained or argued to the jury during trial that McClinton's backpay should be cutoff as of February 2022. Capstone offered this argument after the jury rendered

---

[114] Doc. 142, at 32, 40, 56, 70, 79-80
[115] Doc. 144, at 5, 8
[116] Doc. 162, at 3

a verdict. During trial, Fernandez testified that after February 2022, no Capstone associates were employed at the location where McClinton worked.[117] And Capstone left it at that, it never took this bit of information and explained to the jury why this testimony was important to them. Without any explanation as to why this information was supposedly important for the jury to hear, the jury was free to award McClinton backpay to the date of their verdict. Capstone cannot cry a foul now.

Capstone argues that the district court erred in relying on the case of *Collins v. Koch Foods, Inc*,[118] to support its upholding of McClinton's backpay award. It does acknowledge that *Collins* deals with a defendant waiving the reduction of backpay argument by not arguing it during trial, it also attacks the case for being an unpublished opinion. However, this argument expands into the bigger principle of invited error. Capstone invited this decision of the jury to issue back pay to the "date of the verdict" by never objecting to it during the course of the trial. This Court should not now hear Capstone's argument that things are amiss on appeal.

## V.    Reinstatement

### A.    Reinstatement is Appropriate

---

[117] Doc. 168, at 72:21-23
[118] No. 20-13158, 2022 WL 1741775, at *5 (11th Cir. May 31, 2022)

41

Reinstatement was appropriate in this case. In its ruling concerning reinstatement the district court stated, "neither party cites controlling precedent that the present lack of vacancy is sufficient by itself to make reinstatement inappropriate."[119] Likewise, in its appellate brief Capstone cites to a case from the 4th Circuit when discussing the elements of when reinstatement is infeasible.[120] The elements being: 1) litigation irreparably damages the employer-employee relationship; *or* 2) when the company is no longer in business; *or* 3) when the particular business which plaintiff was qualified is no longer operating; *or* 4) when there was no comparable position available. The operative word *or* substantiates the argument that the sole scenario of lack of job openings is not enough to preclude the remedy of reinstatement. Additionally, McClinton is hard pressed to find any binding precedent from the 11th Circuit that confirms this legal premise. Furthermore, Fernandez testified that there are traveling teams of Capstone employees, "so it's possible that someone could have signed on to our travel team."[121]

The district court granted McClinton's request of reinstatement to his former supervisor position paying $47,096.66 within a 45-mile area of Birmingham,

---

[119] Doc. 198, at 46
[120] Doc. 13 Appellant's Brief, at 67-68
[121] Doc. 168, at 73:8-13

Alabama.[122] The remedial purpose of reinstatement is to make McClinton whole. Each day McClinton is denied reinstatement he is not made whole. If backpay does not continue to accrue while Capstone refuses to reinstate McClinton, he is made less than whole.

B.    Front Pay in lieu of Reinstatement is Appropriate.

Capstone argues that front pay in lieu of reinstatement is an inappropriate remedy. It contends that since McClinton would have ultimately been terminated that he would receive a pecuniary windfall if awarded front pay. At trial, Capstone did not make the argument to the jury that his position would have been eliminated as of February 2022. It did make this argument in post-trial motions to the district court. It was Capstone's burden to prove that McClinton would not have been employed at the time of trial. The question then turns to whether Capstone's argument in post-trial motions satisfies this burden. This question was answered in *Muñoz* v. *Oceanside Resorts, Inc.*[123] At trial, the plaintiff's employer only argued that after his termination his position in room services was completely eliminated throughout the entire company.[124] This Court held that this testimony was not sufficient stating, "The Resort failed to introduce any evidence demonstrating

---

[122] Doc. 180, at 9 and Doc. 199, at 2
[123] 223 F.3d 1340 (11th Cir. 2000)
[124] *Id.,* at 15

*Richard McClinton v. Capstone Logistics LLC*
United States Court of Appeals for the Eleventh Circuit
NO. 24-11261
Brief of Appellee

either that Muñoz was unqualified for another available position or that, for some

other reason, reassignment would have been infeasible."[125] In its Rule 50(b) and

Rule 59 motion, Capstone argues that McClinton would not have been employed

with Capstone because its operations ceased at the Dollar General warehouse

located in Bessemer, AL.[126] And that there were no other Capstone locations in the

Bessemer area.[127] Yet, Capstone never made the narrower argument to the jury that

McClinton would not have been qualified for another available position at a

different location or that reassignment was infeasible for other reasons. Thus,

Capstone has not proven its burden that front pay would be an inappropriate

remedy to make McClinton whole.

## VI.    Capstone's Rule 11 sanctions should be upheld

Capstone contends that the district court erred by issuing Rule 11 sanctions

to its counsel *sua sponte.* It reasons that sanctions were inappropriate because

McClinton's deposition testimony was self-serving and was uncorroborated. Thus,

this testimony standing alone could not lead a rationale trier of fact to find in his

favor. This conclusion is wrong. In deposition, McClinton testified that he and

Langley agreed to amend a disciplinary document from "final written warning" to

---

[125] *Id.*, at 16-17
[126] Doc. 176, at 70
[127] *Id.*, at 70

"verbal counseling."[128] Langley testified at deposition that he did not agree to amend the form and discovered the alteration the next morning.[129] This convenient discovery of the document alteration was Capstone's reason for firing McClinton.[130] The reason an employee is terminated in an employment law case is a material fact for purposes of summary judgment. Also, if opposing parties giving conflicting testimony about the disciplinary notice then, that makes the fact disputed. But Capstone made several claims under the heading, "STATEMENT OF UNDISPUTED MATERIAL FACTS," that Langley discovering the altered document was uncontroverted by the evidence.[131] A show cause hearing was held to allow Capstone to further explain its' position regarding this issue to the district court. The district court issued a reprimand to Capstone. To summarize the court's reason for reprimand succinctly, "Capstone presented as undisputed fact only Mr. Langley's side of the story," while never mentioning Mr. McClinton's testimony to the contrary.[132]

---

[128] Doc. 64-1, at 31-32 & Doc. 84, at 10
[129] Doc. 64-2, at 34, 71
[130] Doc. 64-2, at 34-35, 75-76
[131] Doc. 66-2, at 5, ¶¶29, 30, 31. See also heading Titled, "When McClinton's performance did not improve, Capstone issued him a Corrective Action Notice. McClinton surreptitiously doctored the notice in an effort to lessen the level of discipline." Doc. 66, at 13
[132] Doc. 108, at 3, 5

45

Capstone's justification for not including McClinton's testimony (at the show cause hearing and appeal) is that McClinton's "self-serving testimony… standing alone, could not lead a rationale trier of fact to find in his favor."[133] The idea of self-serving testimony is like beauty, it is in the eye of the beholder. Capstone defined McClinton's testimony regarding the amendment to the disciplinary notice as self-serving because it did not fit within the confines of Langley's testimony regarding the matter. Just because a party deems testimony self-serving does not make it unworthy of credence. "There is no rule of evidence that renders a party's testimony inadmissible simply because it is self-serving and uncorroborated. Most testimony from a party…is self-serving. So long as the testimony is based on personal knowledge, is a statement of fact rather than a conclusory allegation, and is otherwise admissible, it is adequate summary judgment evidence."[134] Not only does this standard apply at the summary judgment level, but self-serving testimony is normally presented by witnesses at trial. At the trial level, it is ultimately up to the jury to determine whose self-serving testimony they believe over the other. "Testimony in any trial from parties or their employees is *usually* self-serving. That's why counsel has decided to elicit it in the first place.

---

[133] Appellant's Brief, at 71, and Doc. 170, at 15, 16, 19, 20, 21
[134] *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1281 n.7 (S.D. Fla. 2015)

46

So there is nothing significant about testimony from interested witnesses being self-serving. If testimony from parties or their employees could be eliminated merely because it is self-serving, then much of the testimony in any trial would never be considered by the factfinder".[135] There is nothing unusual about a party believing an opposing party's testimony is self-serving. But if that self-serving testimony disputes another party's testimony, the rules of civil procedure require it to be documented in a summary judgment brief. Capstone was free to cite McClinton's testimony and then attempt to discredit it. The district court came to a similar conclusion, "if you had reworded it to say, he disputes this, and later in this brief we are going to explain to the Court why his dispute ought to be overlooked."[136] Capstone did not do this. The complete omission of McClinton's testimony and then characterizing Langley's as undisputed warranted a reprimand.

## CONCLUSION

Capstone has failed to show that the district court made in erroneous evidentiary rulings. Capstone is not entitled to a new trial. The rulings on the

---

[135] *Ewing v. Carnival Corp.* 19-20264-CIV-GOODMAN [CONSENT CASE], at *23 n.4 (S.D. Fla. May 27, 2022)*(citing N.L.R.B. v. Walton Mfg.Co.*, 286 F.2d 26, 28 (5th Cir. 1961)(Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*)
[136] Doc. 170, at 22

amended judgment should be affirmed. McClinton seeks an award of costs and

attorneys' fees for this appeal.

Respectfully submitted,

*/s/ Blake C. Edwards*

*/s/ Nicole D. Edwards*

Attorneys for Plaintiff-Appellee
McClinton

OF COUNSEL

**EDWARDS & EDWARDS**

**ATTORNEYS AND MEDIATORS, PLLC**

3603 Pine Lane SE, Suite C

Bessemer, AL 35022

Tel:  (205) 549 – 1379

Fax: (205) 719 – 4033

Email: nicole@edwardsattys.com

        blake@edwardsattys.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirement of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in 14-point Times New Roman, which is a proportionally spaced font.

This brief meets the type-volume limitation under Federal Rule of Appellate Procedure 32(B)(i). This brief contains 10,036 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2024, I officially filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Edward Harold, Esq.*
**FISHER & PHILLIPS, LLP**
201 St. Charles Avenue, Suite 3710
New Orleans, LA 70170
Tel: (504) 522-3303
Fax: (504) 592-3850
eharold@fisherphillips.com

*/s/ Blake Clifton Edwards*
OF COUNSEL

49