No. 24-11261-C

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

RICHARD MCCLINTON

Plaintiff-Appellee,

v.

CAPSTONE LOGISTICS, LLC.

Defendant-Appellant.

---

On Appeal from the
United States District Court for the Northern District of Alabama
Case No. 2:20-cv-00543-AMM

---

## APPELLANTS' REPLY BRIEF

---

Edward Francis Harold
Alabama Bar No. asb-0669-d55h
eharold@fisherphillips.com

FISHER & PHILLIPS LLP
201 St. Charles Avenue
Suite 3710
New Orleans, LA 70170
Telephone: (504) 522-3303
Facsimile: (504) 592-3850

*Counsel for Defendant-Appellants*
*CAPSTONE LOGISTICS, LLC, DAVID KLASS, AND BRYAN HOLBROOK*

FP 52498565.1

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant, Capstone Logistics, LLC provides the following list of the judges, attorneys, persons, associates, firms, partnerships, or corporations that are known to have an actual or potential interest in the case.

1.    AIG Specialty Insurance Company

2.    American International Group, Inc. (NYSE: AIG), ultimate parent of AIG Specialty Insurance Company.

3.    Capstone Logistics, LLC, Defendant

4.    Capstone Logistics Holdings, Inc., parent company of Capstone Logistics, LLC

5.    Edwards & Edwards Attorneys and Mediators, PLLC (counsel for Richard J. McClinton)

6.    Edwards, Blake C. (counsel for Richard J. McClinton)

7.    Edwards, Nicole D. Davis (counsel for Richard J. McClinton)

8.    Fisher & Phillips LLP (counsel for Capstone Logistics, LLC)

9.    Holbrook, Richard Bryan (counsel for Capstone Logistics, LLC)

10.    Harold, Edward Francis (counsel for Capstone Logistics, LLC)

11.    Klass, David (counsel for Capstone Logistics, LLC)

12.    McClinton, Richard J., Plaintiff

i

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

13.    Manasco, The Honorable Anna M., U.S. District Judge, NDAL

14.    Walker, Marion F. (counsel for Capstone Logistics, LLC)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Capstone Logistics, LLC, lists the following parent company: Capstone Logistics Holdings, Inc.  No publicly held corporation owns 10% or more of the stock of Capstone Logistics, LLC or Capstone Logistics Holdings, Inc.

FP 52498565.1

# **TABLE OF CONTENTS**

Certificate of Interested Persons ......................................................... i

Corporate Disclosure Statement ....................................................... ii

Table of Contents ............................................................................ iii

Table of Authorities ........................................................................ v

I.      Introduction ........................................................................... 1

II.     McClinton's ADA Claims ...................................................... 1

        A.      The Existence of a Disability ...................................... 1

                1. Impairment .......................................................... 2

                2. Substantial Limitation ......................................... 4

        B.      Qualified Individual .................................................... 5

                1. Essential Functions ............................................. 5

                2. Medical Evidence Was Necessary to Show McClinton's
                   Requested Accommodations Were Necessary and Reasonable .. 8

                        a.  Cane or Crutches ......................................... 8

                        b.  Reduced Schedule ...................................... 11

                3. McClinton Did Not Prove the Accommodations He Sought
                   Were Necessary ................................................... 12

III.    ADA Retaliation ................................................................. 14

IV.     FMLA Interference .............................................................. 14

V.      Punitive Damages ............................................................... 17

VI.     Backpay ............................................................................. 18

VII.    Reinstatement and/or Front Pay ......................................... 19

VIII.   Rule 11 Sanctions .............................................................. 21

IX.     Conclusion ........................................................................ 22

FP 52498565.1

Case No. 24-11261-C                                    Richard McClinton v. Capstone Logistics, LLC

Certificate of Compliance ................................................................... 24

Certificate of Service ......................................................................... 25

iv

Case No. 24-11261-C           Richard McClinton v. Capstone Logistics, LLC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Cardsoft (assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*,
807 F.3d 1346 (Fed. Cir. 2015) ...........................................................19

*D'Onofrio v. Costco Wholesale Corp.*,
964 F.3d 1014 (11th Cir. 2020) .........................................................13

*Democratic Republic of the Congo v. Air Capital Group, LLC*,
614 F. App'x 460 (11th Cir. 2015) ....................................................16

*E.E.O.C. v. Prevo's Fam. Mkt., Inc.*,
135 F.3d 1089 (6th Cir. 1998) ...........................................................10

*Earl v. Mervyns, Inc.*,
207 F.3d 1361 (11th Cir. 2000) .........................................................13

*Enwonwu v. Fulton-Dekalb Hosp. Auth.*,
286 F. App'x 586 (11th Cir. 2008)........................................................4

*Felkins v. City of Lakewood*,
774 F.3d 647 (10th Cir. 2014) .............................................................2

*Gaston v. Bellingrath Gardens & Home, Inc.*,
167 F.3d 1361 (11th Cir. 1999) ...........................................................9

*Graham v. State Farm Mut. Ins. Co.*,
193 F.3d 1274 (11th Cir. 1999) .........................................................15

*Hicks v. City of Tuscaloosa*,
No. 7:13-cv-02063-TMP, 2016 WL 1180119 (N.D. Ala. Mar. 25, 2016) ..................................................................................................16

*Holland v. Governor of Ga.*,
781 F. App'x 941, 943 (11th Cir., 2019) ...........................................20

*Holton v. First Coast Serv. Options, Inc.*,
    703 F. App'x 917, 922 (11th Cir., 2017) ............................................................10

*Katz v. City Metal Co.*,
    87 F.3d 26 (1st Cir. 1996) ...................................................................................2

*Magwood v. RaceTrac Petroleum, Inc.*,
    No. 22-12501, 2024 WL 1254932 (11th Cir. Mar. 25, 2024) ...........................9

*May v. City of Carbon Hill*,
    6:23-cv-00271-LSC (N.D. Ala. June 9, 2023) .................................................20

*Munoz v. Oceanside Resorts, Inc.*,
    223 F.3d 1340 (11th Cir. 2000) ........................................................................20

*Munoz v. Selig Enters.*,
    981 F.3d 1265 (11th Cir. 2020) ........................................................................15

*Owens v. Georgia Governor's Off. of Student Achievement*,
    143 S. Ct. 2465, 216 L. Ed. 2d 434 (2023) ..................................................2, 10

*Owens v. Governor's Off. of Student Achievement*,
    52 F.4th 1327 (11th Cir. 2022) ..................................................................2, 9, 10

*Palmer v. McDonald*,
    824 F. App'x 967 (11th Cir. 2020) ....................................................................10

*Quindlen v. Prudential Ins. Co. of Am.*,
    482 F.2d 876 (5th Cir. 1973) ............................................................................19

*Rabb v. Sch. Bd. of Orange Cnty., Fla.*,
    590 F. App'x 849 (11th Cir. 2014) ....................................................................12

*Ramji v. Hospital Housekeeping Systems, LLC*,
    992 F.3d 1233 (11th Cir. 2021) ...................................................................16, 17

*Rivera v. Royal Caribbean Cruises Ltd.*,
    711 F. App'x 952 (11th Cir. 2017) ......................................................................3

*Rodriguez v. Walmart Stores E., L.P.*,
    11th Cir. No. 21-14300, 2022 WL 16757097 (11th Cir. Nov. 8,
    2022) ...................................................................................................................3

*Samson v. Fed. Exp. Corp.*,
    746 F.3d 1196 (11th Cir. 2014) ..........................................................6, 8

*Terrell v. USAir*,
    132 F.3d 621 (11th Cir. 1998) ..............................................................12

*Turner v. United Parcel Serv.*,
    No. 2:13-CV-823-WMA, 2014 WL 4458917 (N.D. Ala. Sept. 10,
    2014) ..........................................................................................................12

*United States v. Iglesias*,
    915 F.2d 1524 (11th Cir. 1990) ..........................................................19

*Vero Beach Care Center v. Ricks*,
    476 So. 2d 262 (Fla. Dist. Ct. App. 1985) ...........................................3

*Washburn v. Kansas City Life Ins. Co.*,
    831 F.2d 1404 - 1411 (8th Cir. 1987) .................................................16

*Williams v. Kaiser Found. Health Plan of Georgia, Inc.*,
    No. 1:22-CV-02744-SDG, 2024 WL 1377645 (N.D. Ga. Mar. 31,
    2024) ..........................................................................................................17

*Wilson v. Lowe's Home Ctr.*, LLC,
    415 F. Supp. 3d 1060 (S.D. Ala. 2019) ..............................................12

**Statutes**

29 U.S.C. §2612(a)(1)(D) ..............................................................................17

**Other Authorities**

29 CFR 1630.2(n)(3) .......................................................................................6

## ARGUMENT AND LAW

## I.    INTRODUCTION

What Plaintiff Richard McClinton does not say in his Opposition Brief is more significant than what he does. He does not argue any evidence connects a physiological condition to his impairment. He does not argue any evidence shows how he was limited in walking compared to the general population. He does not argue any medical evidence proves he needed an accommodation. Rather, he argues these evidentiary deficiencies do not matter. They do.

## II.    MCCLINTON'S ADA CLAIMS

### A.    THE EXISTENCE OF A DISABILITY

McClinton's Brief combines the distinct aspects of the ADA's definition of disability discussing the concepts of impairment and substantially limiting as if one element.[1] This tactic allows him to assert that medical evidence is unnecessary for proving any element of "disability." But the parts of the definition are distinct. The lack of medical evidence defeats as a matter of law the existence of an "impairment" and that an impairment <u>caused</u> his limitations because making such findings in a non-apparent disability case requires medical evidence. His failure to prove he was "substantially limited" is based on there being insufficient evidence, medical or otherwise, to prove the extent of the limitation on his ability to walk.

---

[1] Brief of Appellee pp. 14 – 15. App. Doc. 27 pp. 24 – 25.

1. <u>Impairment</u>

McClinton's response to the absence of medical evidence connecting any underlying physiological condition to his pain and/or difficulty walking is to claim medical evidence is unnecessary.[2] In some cases, this would be true. For example, an individual missing an arm would not need a doctor to tell a jury he is missing an arm. *Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996). *See also Owens v. Governor's Off. of Student Achievement,* 52 F.4th 1327, 1336 (11th Cir. 2022), cert. denied sub nom. *Owens v. Georgia Governor's Off. of Student Achievement*, 143 S. Ct. 2465, 216 L. Ed. 2d 434 (2023) (employee in wheelchair does not need medical evidence of the need for assistance in climbing a staircase). But where the disability and the limitations it causes are not within the experience of laypersons, courts have generally required expert medical testimony. *See e.g., Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014) (plaintiff's testimony inadmissible to prove disability "as they diagnose her condition as avascular necrosis or state how that condition causes limitations on major life activities, for those are clearly matters "beyond the realm of common experience and ... require the special skill and knowledge of an expert witness.").

---

[2] Brief of Appellee p. 10; App. Doc. 27 p. 20. "Expert testimony of medical causation was not required at trial."

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

The only physical impairment McClinton testified to was an unspecified condition in his back for which he underwent surgery.[3] But spinal issues, their cause, and their impact, particularly post-surgery, are not the type of physical impairments that are observable and within the realm of common experience. *Rodriguez v. Walmart Stores E., L.P.*, 11th Cir. No. 21-14300, 2022 WL 16757097, at *2 (11th Cir. Nov. 8, 2022) ("Soft tissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons.") (quoting *Vero Beach Care Center v. Ricks*, 476 So. 2d 262, 264 n.1 (Fla. Dist. Ct. App. 1985)). *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017) (expert testimony required to understand the nature and extent of injuries including back pain). And McClinton does not argue any evidence, even his own testimony, connects his post-surgery back to the pain that limited his ability to walk.

McClinton's argument on this point misreads the case he cites. He asserts, "The test for establishing a disability is not by submitting evidence of a medical diagnosis but evidence that the limitation caused their impairment in terms of their own experience."[4] The case actually holds, "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a

---

[3] Doc. 167 p. 183. The only record evidence identifying McClinton's underlying conditions was the medical record from his pre-surgery doctor's appointment. Doc. 156 – 17. At trial, it was introduced to establish the date McClinton scheduled his surgery. Doc. 171 pp. 42 - 44. There is no medical evidence of the condition of his back post-surgery.
[4] Opposition Brief p. 14.

FP 52498565.1

medical diagnosis of an impairment; rather, the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008). In other words, proving the existence of a physical impairment standing alone is not enough to prove a disability; not that evidence of a physical impairment is unnecessary.

McClinton is left with the proposition that the pain itself is the "physical impairment." He cites no cases finding pain unconnected to a physical impairment is a disability. And the source of an individual's pain cannot be ignored when assessing whether an individual has a disability. Many different physical ailments cause pain from a stubbed toe to a broken bone to chronic inflammation. Without knowing the source of the pain, it is impossible to determine whether a condition is long term or temporary, a critical consideration in distinguishing between medical conditions that come within the scope of the ADA and those that do not. The reason for McClinton's pain remains a mystery. He thus failed to prove he had a physical impairment that caused a substantial limitation.

2.    Substantial Limitation

McClinton takes no issue with the authority Capstone cited for the type of evidence necessary to prove a substantial limitation, *i.e.*, evidence of the timing, frequency, and duration of the limitations. He identifies little record evidence of the

4

extent of his walking limitation that was not acknowledged by Capstone in its brief.[5]

He only adds that Langley was surprised when McClinton returned to work.

Langley's surprise is not evidence of the extent of McClinton's limitations. Langley

had spoken to McClinton and had denied his request to use crutches.[6] When

McClinton nevertheless appeared at work, he was surprised.[7] There was no evidence

Langley knew anything about the extent of McClinton's limitations outside of what

McClinton conveyed. Nor does Langley's perception inform the extent of

McClinton's limitations other than at that single point in time. And when he

returned, McClinton provided Langley medical notes with no restrictions.

Ultimately, McClinton's testimony was the only evidence of the extent of his

limitations. It was inadequate to prove he was substantially limited in his ability to

walk particularly in light of medical records indicating no such limitation.

### B.    QUALIFIED INDIVIDUAL

1.    <u>Essential Functions</u>

In his argument on essential functions, McClinton hews closely to the District

Court's analysis addressed in Capstone's original brief. The one new argument is

that because of the presence of other employees who could do the lifting that

McClinton indisputably could not, lifting was not an essential function. But the

---

[5] Compare Appellant's Brief pp. 21 – 22.
[6] Doc. 167 p. 208.
[7] *Id.*

evidence in the case McClinton cites for this proposition is a far cry from what McClinton presented. In *Samson v. Fed. Exp. Corp.*, 746 F.3d 1196, 1202 (11th Cir. 2014), the plaintiff presented evidence that the job function at issue, test driving trucks, constituted on average only 3.71 hours per year of the mechanics' duties. He also presented evidence that another mechanic had test driven trucks only once per year for three years. Finally, it noted the presence of other drivers at the facility who could assist in the function.[8] McClinton's testimony did not show the tasks he could not perform were so limited.

> Q And you previously lifted, pushed, pulled, and carried cases weighing 5 to 80 pounds as part of your job as site supervisor, correct?
>
> A Between 5 and 80 pounds, but not 80 pounds.
>
> Q You agreed with Dr. Chambers's assessment that you could not do that, correct?
>
> A Correct.
>
> Q And you previously squatted, kneeled, bent for three to six hours a day, correct?
>
> A Yes. You missed twist, which I did not do beforehand either.
>
> Q And Dr. Chambers said you couldn't do that either, correct?

---

[8] Frankly, the presence of other employees to do a task should never be a consideration in whether a function is essential because removing an essential function, *i.e.*, assigning it to another, is never required. The regulations do not list this as a consideration. 29 CFR 1630.2(n)(3).  It is only after a court has determined a function is not essential can shifting it to another be a reasonable accommodation. Determining if other employees could perform a function the plaintiff cannot during the essential function analysis puts the cart before the horse.

A Correct.

Q And you agreed with that assessment?

A I did.

Q You previously were responsible for handling pallets and cases of product on and off the pallets from time to time, correct?

A From time to time.

Q And Dr. Chambers said you couldn't do that either, correct?

A Correct.

Q And you agreed with that assessment?

A I did.

Q You previously were responsible for stacking cases from time to time, correct?

A Correct.

Q And Dr. Chambers said you couldn't do that either, right?

A Correct.

Q And you agreed with that assessment?

A I did.

Q All of these restrictions that Dr. Chambers said you could not do were part of your job duties as supervisor, correct?

A This is an unloader fit for duty release form, sir.

Q That wasn't my question. All of the restrictions that Dr. Chambers said you could not do were part of your job duties as site supervisor, correct?

7

Case No. 24-11261-C                         Richard McClinton v. Capstone Logistics, LLC

    A They were a part of.[9]

Unlike in *Samson*, where the plaintiff could not do one specific identified duty that constituted .17% of his work time, McClinton could not do many. He did not submit any evidence that these duties were as infrequently performed as the one duty at issue in *Samson*. In fact, McClinton admitted he spent most of his shift on the dock floor where these activities occurred.[10]

    2.    <u>Medical Evidence Was Necessary to Show McClinton's Requested Accommodations Were Necessary and Reasonable</u>

    a.    <u>Cane or Crutches</u>

Just as with disability, McClinton claims no medical evidence was necessary to establish his need for the accommodations he sought.[11] The necessity of medical evidence underpins two distinct issues. To establish that he was a qualified individual with a disability, a predicate for the disability discrimination and refusal to accommodate claims, McClinton had to prove with sufficient evidence at trial that he needed an accommodation because of his disability and that a reasonable accommodation allowing him to perform the essential functions of the job existed. He separately needed to establish that he properly requested a reasonable accommodation for Capstone to be liable for refusal to accommodate. The lack of medical evidence is an element in both issues.

---

[9] Doc. 171 pp. 51 l. 20 – 53 l. 8.
[10] Doc. 171 p. 15 ll. 1 – 9.
[11] Appellee's Brief p. 20; App. Doc. 27 p. 30.

The case McClinton cites on the issue of the necessity of medical information considered whether the plaintiff provided the employer sufficient notice to support a refusal to accommodate claims.

> For RaceTrac to be liable for a failure to accommodate, Magwood must have demanded a specific accommodation from it. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). We have not determined what form an accommodation request must take, but we have advised that an employee "need only identify a statutory disability and explain generally how a particular accommodation would assist her." *Owens* [*v. Governor's Office of Student Achievement*], 52 F.4th [1327] at 1336.

*Magwood v. RaceTrac Petroleum, Inc.*, No. 22-12501, 2024 WL 1254932, at *5 (11th Cir. Mar. 25, 2024). And after McClinton cites this standard, the next sentence of his brief reveals he did not meet it. "McClinton informed Langley on April 17 and April 18, 2019, that he was having trouble walking in a steady manner and requested crutches to walk around adequately on the job." Nowhere does McClinton say that he "identif[ied] a statutory disability." "Trouble walking in a steady manner" is not a statutory disability. The failure to accommodate verdict must be reversed for this reason alone.

In any event, when an employee has a disability that is not open and obvious, and for which the need and efficacy of the requested accommodation is not readily apparent, an employer is entitled to obtain medical information. This includes the existence of the medical condition, the extent of the limitations it causes, and how

accommodations would overcome those limitations to allow an employee to perform the essential functions of the job. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 – 1335 (11th Cir. 2022), cert. denied sub nom. *Owens v. Georgia Governor's Off. of Student Achievement*, 143 S. Ct. 2465, 216 L. Ed. 2d 434 (2023). "[T]he employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting a special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists." *E.E.O.C. v. Prevo's Fam. Mkt., Inc.*, 135 F.3d 1089, 1094–95 (6th Cir. 1998). "Requiring a note from a physician before providing an accommodation violates neither the FMLA nor the ADA." *Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 922 n.8 (11th Cir., 2017). *See also Palmer v. McDonald*, 824 F. App'x 967, 981 (11th Cir. 2020) (employer not liable for failure to accommodate where employee did not provide medical information to support need for accommodation).

It follows that to prove a disability related need for and entitlement to a reasonable accommodation at trial, a plaintiff must present at least as much evidence as he is required to provide an employer to properly put it on notice of the need for an accommodation. And McClinton does not argue he presented medical evidence

at trial that he needed a cane or crutches to walk because of his back condition. Conversely, the medical records in evidence, and that he provided Capstone, do not evidence the existence of a walking impairment or need for crutches or a cane. Thus, there is insufficient evidence to support the existence of a reasonable accommodation that would have allowed McClinton to perform the essential functions and McClinton did not prove he was a qualified individual with a disability at trial.

b.     Reduced Schedule

McClinton claims that Capstone has raised the unreasonableness of his request for a reduced schedule for the first time on appeal. It did not. In its oral motion for directed verdict, Capstone explicitly argued the given the circumstances of this job, a reduction in hours was not a reasonable accommodation as a matter of law.[12] It re-urged this point in its Renewed Motion for Judgment as a Matter of Law.[13] It did not waive the issue.

Like the crutches and cane, McClinton submitted no medical evidence that he needed to work fewer hours because of a back issue, the pain in his legs, or his difficulty walking. But more importantly, the accommodation was not reasonable on its face. McClinton does not deny the increased hours his job required when he

---

[12] Doc. 171 p. 101 – 102.
[13] Doc. 176 pp. 22 – 23.

11

returned. Not every job is the same every day. Being able to work the extra hours a job entails from time to time, like a lawyer with an appellate brief due, is part and parcel of being able to perform the essential functions of the job. Courts have repeatedly found a request for a reduction in hours is not a reasonable accommodation. *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998); *Rabb v. Sch. Bd. of Orange Cnty., Fla.*, 590 F. App'x 849, 851 (11th Cir. 2014) ("Under this circuit's precedent, a part-time position that does not exist is not a 'reasonable' accommodation because the ADA imposes no duty on the employer to create a part-time position to accommodate an employee's disability."); *Wilson v. Lowe's Home Ctr.*, LLC, 415 F. Supp. 3d 1060, 1069 (S.D. Ala. 2019) (employee's request schedule be reduced to 40 hours from 48 was not a reasonable accommodation). *See also Turner v. United Parcel Serv.*, No. 2:13-CV-823-WMA, 2014 WL 4458917, at *6 (N.D. Ala. Sept. 10, 2014) ("A shortened and flexible schedule, on the other hand, is not a reasonable accommodation at all—allowing this schedule change would not enable Turner to perform the essential functions of her job; rather, it would thwart such performance.").

### 3.    McClinton Did Not Prove the Accommodations He Sought Were Necessary

McClinton argues that although he did his job without the accommodation of the cane or crutches, he was forced to. But in the District Court, he explicitly denied needing any accommodation. "Lastly, McClinton did not admit that he was

incapable of performing his job without an accommodation of using a cane or crutches. McClinton performed his job in a capable manner without an accommodation."[14] This refutes his claim that *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014 (11th Cir. 2020) is different from this case because D'Onofrio admitted she did not need an accommodation. McClinton also admitted he did not need an accommodation. As such, his failure to reasonably accommodate claim was legally deficient.

On appeal, Capstone did not claim error in the jury's finding on its undue hardship affirmative defense. While believing it incorrect, an appellate brief has only so much room and so Capstone focused on the more obvious error, the conclusion the requested accommodations were reasonable. McClinton's brief argues that "Capstone did not meet its' [sic] burden of proving that McClinton's requested accommodations were unreasonable."[15] Capstone bore no burden of proving the accommodations unreasonable. McClinton bore the burden of proving they were reasonable which he did not do. "[B]efore an employer has a duty to show undue hardship, the plaintiff first must show that a reasonable accommodation exists." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

---

[14] Doc. 187 p .13.
[15] Appellee's Brief p. 21, Doc. No. 27 p. 31.

## III.    ADA RETALIATION

Plaintiff's argument in support of the verdict on his retaliation claim bears response only in that he acknowledges his requests for a reduced schedule and to use a cane or crutches are the only potentially protected activity at issue. He does not offer any argument on why, presuming Capstone is correct that he did not have a disability nor was a qualified individual, his belief to the contrary would be reasonable. As a result, if the disability discrimination and refusal to accommodate verdicts are reversed, the retaliation verdict must be reversed too.

## IV.    FMLA INTERFERENCE

McClinton responds to Capstone's argument that the jury and district court improperly awarded compensatory damaged under the FMLA with the claim Capstone "waived its argument for remittitur."[16] Remittitur is not the issue. Capstone argued on its motion for directed verdict that McClinton proved no recoverable economic damages associated with any potential FMLA interference and that therefore, judgment should be granted as a matter of law.[17] It reiterated this point in its Post Trial Renewed Motion for Judgment as a Matter of Law.[18] It repeated these arguments in its Opposition to Plaintiff's Motion to Amend the Judgment.[19] It did

---

[16] Appellee's Brief p. 24, App. Doc. 27 p. 34.
[17] Doc. 171 p. 108 ll. 10 – 22.
[18] Doc. 176 pp. 38 – 42.
[19] Doc. 188 pp. 2 – 5.

14

not waive the issue of the sufficiency of the evidence of damages to support the FMLA interference claim.[20]

McClinton argues the FMLA award is justified through a series of confusing computations based on his lost wages and benefits. But he does not explain how the conduct he identifies as interference caused lost wages. He simply calculates an amount he would have earned from the date of the interference to the date of trial and claims that is the basis for the award.

"An employee's damages must be 'a result of' the employer's interference with rights guaranteed by the FMLA." *Munoz v. Selig Enters.*, 981 F.3d 1265, 1275 (11th Cir. 2020) *citing Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999). McClinton lost wages because Capstone fired him. He presented no evidence that the interference played any role in his termination. And the District Court in upholding the award did not conclude that he lost any wages because of the interference. Moreover, the argument that the interference caused lost wages, is exactly what the District Court concluded was legally impermissible when removing termination as a form of FMLA interference from the jury instructions.

If the FMLA award was in fact for lost wages, it would have been duplicative of the lost wages awarded under the ADA claims and would have been reduced for

---

[20] To the extent McClinton's waiver argument relates to Capstone's request that if the FMLA award stands, it be reduced to twelve weeks of wages, it is addressed in Capstone's original brief. Appellant's Brief pp.46-7, App. Doc. 13 pp. 61 – 62.

that reason just as the District Court reduced the multiple backpay awards under the ADA claims.[21] *See Hicks v. City of Tuscaloosa*, No. 7:13-cv-02063-TMP, 2016 WL 1180119 at \*3 (N.D. Ala. Mar. 25, 2016) (citing *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 F. App'x 460, 474 (11th Cir. 2015) ("A double recovery occurs when the damages awarded on two or more claims stemming from the same conduct exceeds the actual damages proven by the plaintiff at trial."). *See also Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1410 - 1411 (8th Cir. 1987) (a plaintiff is not entitled to two awards for the same damages under alternate theories of liability).

McClinton cites *Ramji v. Hospital Housekeeping Systems, LLC*, 992 F.3d 1233 (11th Cir. 2021) for two propositions: 1) that his lay opinion testimony about the impact of taking less leave on his back's healing was permissible, and 2) that damages for the type of injury he claims are recoverable. Neither is true.

In *Ramji*, the court rejected the defendant's expert medical testimony for many reasons including that another doctor disagreed with the expert. "In other words, unlike Dr. Jove, Dr. Barbour did not think that Ramji had a preexisting condition that would have substantially hindered her recovery." *Id. at* 1246. The evidence was not a lay opinion about a medical condition as McClinton's testimony is here.

---

[21] Doc. 198 p. 38.

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

Nor did the *Ramji* court conclude pain and suffering damages were available for the exacerbation of the plaintiff's injury through the denial of FMLA leave. Rather, the interference rendered her unable to perform her job resulting in her discharge. *Id.* The damages caused by this interference were economic, *i.e.*, lost wages.

Finally, it should be noted that McClinton's claim that his recovery from back surgery was interfered with by not having a full twelve weeks of FMLA leave diametrically opposes his claim that he was a qualified individual with a disability. It rests on the proposition that he was entitled to FMLA leave that he did not use. To have been entitled to FMLA leave during the period he returned to work, McClinton would have needed to have been unable to perform the functions of his job. 29 U.S.C. §2612(a)(1)(D). "[A]n employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job." *Williams v. Kaiser Found. Health Plan of Georgia, Inc.*, No. 1:22-CV-02744-SDG, 2024 WL 1377645, at *4 (N.D. Ga. Mar. 31, 2024).

## V.    **PUNITIVE DAMAGES**

McClinton argues Capstone cannot attack the punitive damage jury instructions on appeal because it did not object below. But Capstone has not attacked the instruction as erroneous. Rather, it challenges the District Court's decision that

17

the jury instruction prohibits consideration of the status of a decision maker in the corporate hierarchy in assessing whether the evidence supported the award of punitive damages. The pattern jury instruction does not prohibit consideration of a decision maker's level in the corporate hierarchy in determining the sufficiency of the evidence to support a punitive damages award.

McClinton does not contest the principle that punitive damages are not available unless the decision maker is aware he is potentially violating the ADA. Nor does he identify any evidence suggesting Langley held such knowledge. There is no such evidence and regardless of other evidence of ill will or malice, this renders the punitive damage award improper.

Capstone has not challenged on appeal the jury's rejection of its good faith defense to punitive damages and McClinton's argument about it is pointless.

## VI.  **<u>BACKPAY</u>**

McClinton's arguments against reducing the backpay award mostly parrots the District Court's reasoning which Capstone addressed in its original brief. He additionally contends that Capstone's failure to argue the cessation of Capstone's work at the Dollar General facility terminated backpay to the jury during closing argument waived the issue. He cites no authority for this proposition. The content of a closing argument is irrelevant to preserving sufficiency of the evidence issues for

appeal. "The sole purpose of closing argument is to assist the jury in analyzing the evidence." *United States v. Iglesias*, 915 F.2d 1524, 1529 (11th Cir. 1990).

McClinton does not respond to the Eleventh Circuit decisions Capstone cited holding backpay is equitable relief and a jury's award is advisory only. He has therefore conceded this point. *Cardsoft (assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015). The District Court was free to make any award of backpay appropriate on the evidence and the refusal to consider arguments because of the structure of the jury interrogatories was error.

## VII.  REINSTATEMENT AND/OR FRONT PAY

McClinton's argument for upholding the reinstatement order suggests a misapprehension of disjunctive conjunctions. After acknowledging four circumstances under which courts refuse reinstatement, he argues, "The operative word *or* substantiates the argument that the sole scenario of lack of job openings is not enough to preclude the remedy of reinstatement."[22] The opposite is true.

While normally glossed by courts interpreting its use in statutes, the principles are no different when a court writes a list of items each separated by "or." "Crucially, the word 'or' is a disjunctive and usually 'indicates alternatives and requires that those alternatives be treated separately.' *Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir. 1973); *see also* Antonin Scalia & Bryan A. Garner, Reading

---

[22] App. Doc. 27 p. 42.

Law: The Interpretation of Legal Texts, 116 (2012) ("Under the conjunctive/disjunctive canon, . . . or creates alternatives.")." *May v. City of Carbon Hill*, 6:23-cv-00271-LSC, at *7 (N.D. Ala. June 9, 2023). "In other words, disjunctive language establishes alternative means of violating or triggering a statutory provision." *Holland v. Governor of Ga.*, 781 F. App'x 941, 943 (11th Cir., 2019). The absence of a job in which a plaintiff can be reinstated is not only sufficient to deny reinstatement but compels it. Capstone quite literally has no ability to comply with the reinstatement order, and the order was an abuse of discretion.

On front pay, McClinton again posits that Capstone cannot argue against his right to front pay because it did not argue it in front of the jury. But reinstatement and front pay were not put to the jury even in an advisory capacity. It is nonsensical to suggest waiver for not arguing to the jury about an issue it was not deciding. And Capstone was under no obligation to put on evidence at trial. District Courts have the discretion to and often do conduct evidentiary hearings when considering reinstatement and backpay.

McClinton claims that he should receive front pay because Capstone failed to prove he would not have been qualified for another position citing *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340 (11th Cir. 2000). But in *Oceanside Resorts*, the employer did not cease operations, it only eliminated the plaintiff's position from its workforce. *Id. at* 1350. ("…the Resort's only evidence that it would not have

20

employed Muñoz at the time of trial is its allegation that it has discontinued its room services.") Contra here, Capstone lost the Dollar General contract and discharged its entire workforce.[23] Specifically, it discharged the individual who at that time held McClinton's position.[24] It has never re-employed any of that workforce.[25] It did not and does not have any supervisor positions in which to transfer McClinton within the 45 mile radius of Birmingham McClinton established.[26] This indisputable evidence sufficiently proves that McClinton would not have remained employed with Capstone as of the time of trial and front pay is unwarranted.

## VIII.  <u>RULE 11 SANCTIONS</u>

McClinton's argument on Rule 11 sanctions claims Capstone completely omitted his testimony about who doctored the disciplinary notice in the motion for summary judgment. It did not. Capstone identified and referenced the testimony in its Memorandum in Support of Summary Judgment when it stated, "Specifically, his self-serving allegation that Langley agreed to "change" the Corrective Action Notice from a final written warning to a verbal warning threatening suspension ...."[27] He also argues the only basis Capstone proffered the District Court for refuting this testimony was the claim it was "self-serving" and recites a host of cases standing for

---

[23] Doc. 188 – 1. Declaration of Jose Fernandez.

[24] *Id.*

[25] *Id.*

[26] *Id.* "He seeks reinstatement to a his full-time, second-shift supervisor position paying at least $47,096.66 within a 45 mile area of Birmingham, Alabama." Doc. 180 p. 9.

[27] Doc. 66 p. 36.

the axiomatic proposition that most testimony is self-serving. But that is not what Capstone argued or presented to the trial court. While Capstone described the testimony as self-serving, it did not ask the District Court to discount it on that basis. Rather, it listed eight pieces of evidence that undermined McClinton's testimony arguing that the weight of the evidence was so compelling that McClinton's testimony was insufficient to establish pretext.[28] There was no basis for sanctions.

## IX.    **CONCLUSION**

Each ADA case is unique because unlike race or gender, disabilities are not unitary. No two people have identical experiences even if they share the same condition. And a person's condition can change from one year to the next. Bad backs are unfortunately common, and most people know someone with one. It would be easy then to make the leap without evidence that McClinton's leg pain had some connection to his post-operative spine. No doubt that is what the jury did. But that is exactly the wrong assumption to make when evidence is missing after trial. McClinton could have called his doctor as a witness to make the missing connections. He did not. The flaw created in the evidence by this omission cannot be fixed with speculation, but that is what the District Court ultimately allowed. It was error and the verdict on all the ADA claims must be reversed. Likewise, the FMLA interference verdict cannot stand because McClinton did not offer evidence

---

[28] *Id at* pp. 36 – 37.

22

of recoverable damages caused by the interference. Finally, the sanctions order should be reversed because the conduct the order rests on was not akin to contempt.

Wherefore, Defendant requests that the Court reverse the judgment in its entirety, dismiss all McClinton's claims with prejudice, and reverse the sanctions order.

Respectfully submitted,

*s/Edward F. Harold*
Edward Francis Harold
Alabama Bar No. asb-0669-d55h
eharold@fisherphillips.com
FISHER & PHILLIPS LLP
201 St. Charles Avenue
Suite 3710
New Orleans, LA 70170
Telephone: (504) 522-3303
Facsimile: (504) 592-3850
*Counsel for Defendant-Appellants*

FP 52498565.1

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B)(1), Fed. R. App. Proc., in that, excluding the parts of the document exempted by Rule 32(f), Fed. R. App. Proc., this brief contains 5257 words.

I further certify this brief complies with the typeface requirements of Rule 32(a)(5), Fed. R. App. Proc., and the type-style requirements of Rule 32(a)(6), Fed. R. App. Proc., in that this document has been prepared using Word 14-point font in Time New Roman.

*s/Edward F. Harold*
EDWARD F. HAROLD

FP 52498565.1

Case No. 24-11261-C                    Richard McClinton v. Capstone Logistics, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2024, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I further certify that on October 8, 2024, the foregoing Appellant's Brief was served by e-mail on counsel for Defendant as follows:

Blake C. Edwards
Nicole D. Edwards
EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022
blake@edwardsattys.com
nicole@edwardsattys.com

Dated: October 8, 2024.

By: /s/ *Edward F. Harold*
Edward F. Harold
Alabama Bar No. asb-0669-d55h
eharold@fisherphillips.com
FISHER & PHILLIPS LLP

FP 52498565.1